### ONONDAGA COUNTY SAVINGS BANK v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 3, 1894.)

#### No. 8.

BILLS AND NOTES—LIABILITY OF INDORSER—FORGERY OF PRIOR INDORSEMENT.
The O. Savings Bank indorsed, and collected from the assistant treasurer of the United States, two drafts, issued by a United States pension agent, payable to one W., whose name appeared upon the drafts when they were received by the bank. The indorsement of W. proved to be a forgery; W. being dead when the drafts were issued, and some one having personated her in signing the affidavits and vouchers to procure the drafts. *Held,* that the bank was liable to the United States for the amount it had received upon the drafts, with interest from the date of demanding repayment, notwithstanding it had acted in good faith, upon an apparently sufficient identification of W.'s signature.

In Error to the Circuit Court of the United States for the Northern District of New York.

Judgment was entered in the district court of the Northern district of New York in favor of the United States, the defendant in error, against the savings bank, for $2,943.51, on June 23, 1890, the recovery being for the amount of two drafts, dated August 31, 1882, for $924.80 and $1,000, respectively, with the interest from August 31, 1882, and costs. A writ of error was taken to the circuit court, which court modified the judgment by "deducting therefrom the sum of $241, to wit, the amount of the interest upon the drafts complained upon from August 31, 1882, the date thereof, until September 15, 1884, the date of demand of repayment." As so modified, the judgment was affirmed, and the action of the circuit court now comes up for review.

Chas. L. Stone, for plaintiff in error.
W. A. Poucher, for the United States.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. This sum of $1,924.80 was collected by the savings bank from the assistant treasurer of the United States at New York on or about August 9, 1882, upon two drafts

issued by T. L. Poole, United States pension agent, payable to the order of one Alma Wood. The drafts, when presented to the assistant treasurer, bore the indorsement of the name of the payee, Alma Wood, and were further indorsed by Sylvester Wood, her husband, and by the plaintiff in error, with the instructions, "Pay First National Bank of New York or order for account of Onondaga County Savings Bank." The signature "Alma Wood" was a forgery. She had died before the drafts were sent to her, and some person falsely personating her had signed the affidavit and the receipts accepted by the pension agent as the proofs or vouchers upon which he issued the drafts, and in the same handwriting had signed her name in indorsement upon the back of the drafts themselves. The bank concededly acted in good faith. Its officers did not know the signature either of Alma Wood or of Sylvester Wood. The latter called at the bank with one John O'Brien, who was one of its depositors, and known to its officers as engaged in procuring pensions. O'Brien stated that he was the attorney of the pensioner in this case. He identified Sylvester Wood, and stated that the indorsement "Alma Wood" was correct. In the presence of the paying teller, Sylvester's indorsement was put upon the drafts; the fact being noted thereon that he was "identified by John O'Brien, of Caughienoy." Relying upon this identification, the bank indorsed and caused the drafts to be presented as above stated. They were paid by the assistant treasurer. Upon discovery of the forgery, the defendant in error demanded a return of the money so paid, with interest, and subsequently brought this action.

The law applicable to such a state of facts is correctly and succinctly stated in the opinion of the district judge:

"Money paid under a mistake of fact may be recovered back. Negligence of the plaintiff in making the mistake does not give the defendant the right to retain what is not his, unless such negligence has so misled and prejudiced him that it would be inequitable to require him to refund. A party who transfers a bill of exchange by indorsement warrants that the instrument is genuine, and is liable upon the warranty if any of the names prior to his own are forged. National Bank of Commerce v. National Mechanics' Bank, 55 N. Y. 211; White v. Bank, 64 N. Y. 316; 1 Edw. Bills & N. §§ 242, 273, 274; 2 Pars. Notes & B. 597."

The plaintiff in error contends, however, that under the facts proved in this case it should not be required to respond. It is argued that the loss was the natural and proximate result of negligence in issuing the drafts. It appears, however, that they were issued only upon the receipt of vouchers regular in form, apparently subscribed by Alma Wood and by two witnesses, with a certificate by a notary public that all three of them had, on August 2, 1882, appeared personally before him, and made oath to the truth of their respective statements, and that he believed them to be credible persons. With such vouchers before him, it was certainly not negligence on the part of the pension agent to send checks for the amount receipted for to the person inscribed on his roll as a pensioner, at her post-office address. The government had a right to rely upon the fact that the assistant treas-

urer would pay out no money on the draft except to Alma Wood personally, upon proof of her identity, or to some responsible person presenting her indorsement and guarantying its genuineness; and it is no defense to a claim that an indorsee who has, by a forged indorsement, received from the drawee money to which he is not entitled, shall refund the same, to show that the same person who deceived him into paying money on the forged indorsement of the draft also induced the government to issue the draft on a forged signature to the voucher.

On the back of the drafts was printed the following notice:

"The payee's indorsement on this check must correspond with the signature to the voucher for which the check was given. If the payee cannot write, his or her mark should be witnessed, and the witness state his or her residence in full."

It is contended that the effect of this is to make the draft payable, not to the individual named as payee, but to whoever might indorse it with the same signature as that affixed to the vouchers. There is no force in this contention. The notice was, as the district judge held, intended only to insure greater accuracy and precision, and was for the benefit of all who might thereafter deal with the drafts. The requirement that Alma Wood should indorse the drafts with the same signature with which she signed the vouchers did not operate to change the designation of the payee. It was still the "order" of Alma Wood, and of Alma Wood only, which was required to authorize the payment of the money to any one other than herself. Moreover, it in no way misled or deceived the bank, which made no effort to ascertain whether or not the signature corresponded, but cashed the drafts on the simple assurance of its depositor that the signature of Alma Wood was correct.

The fact that the government did not discover the forgery for two years after payment of the drafts is no defense. Where the genuineness of the signatures to the vouchers was duly certified by a notary public, as the statute required, and the genuineness of the signatures to the drafts was guarantied by a responsible banking corporation, which had presumably informed itself before presenting the paper, there was nothing to excite the suspicion of the government officers. How it came about that suspicion was finally awakened, and the fraud discovered, does not appear; but the mere fact that this did not happen until two years afterwards will not support the contention that it was negligence not to discover it before the bank had lost the opportunity of itself recovering from the individual who had swindled it. The proof shows that the bank was notified some three days after the forgery was discovered, which was certainly a reasonably prompt notice. The refusal of the defendant in error to return the drafts has in no way prejudiced the plaintiff in error, or deprived it of any remedy against those who defrauded it. The judgment of the circuit court is affirmed, with costs.