*Tillinghast & Tillinghast,* for respondent Campbell.

---

D. H. TOLMAN *vs.* AMERICAN NATIONAL BANK.

PROVIDENCE—MARCH 11, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Bills and Notes.   Fictitious Payee.   Forged Signature.*

A., by fraudulently representing himself to be B., obtained a check from C., payable to the order of B.   At the time C. knew of the existence of B. and delivered the check to A., supposing him to be B.   A. indorsed B.'s name on the check and gave it to D., who collected it from the bank :—

*Held,* that under the negotiable instruments act, Pub. Laws R. I. cap. 674, § 31, C. could recover back the money from the bank.

ASSUMPSIT.   The facts are fully stated in the opinion. Heard on petition of plaintiff for new trial, and new trial granted.

STINESS, C. J.   The plaintiff sues to recover money paid out by the defendant, on his account, upon his check, under a forged indorsement.   Louis Potter, representing himself to be Ernest A. Haskell, went to the plaintiff to get a loan of money, giving the residence and occupation of Haskell as his own.   The plaintiff made inquiry, and finding that Haskell was employed and was living as represented, he agreed to make the loan.

Potter, under the name of Haskell, gave his note to the

plaintiff, and the plaintiff gave him a check on the defendant payable to the order of Haskell, delivering it to Potter, supposing him to be Haskell.

Potter indorsed Haskell's name on the back of the check and gave it to A. R. Himes, who collected it from the bank. When the note given to the plaintiff became due, the fraud was discovered ; he thereupon notified the bank and demanded a return of the amount paid on the check to the credit of his account.

At the trial a verdict for the defendant was directed, and the plaintiff petitions for a new trial.

(1) The question is whether the bank is liable for the payment which it made on this check.

It is a fundamental rule of banking that, when a bank receives money to be checked out by a depositor, it is to be paid only as the depositor shall order. The bank assumes this duty in receiving the deposit. If, therefore, it pays out money otherwise than according to such order, it is liable to the depositor for the amount so paid. The bank thus assumes the responsibility of seeing that the money gets to the party authorized to receive it. Hence, if it pays money out on a forged signature, the depositor being free from blame or negligence, it must bear the loss. In this case the plaintiff directed the money to be paid to the order of Ernest A. Haskell. It was not so paid. He did not indorse the check. Potter forged his signature. Under these circumstances the plaintiff's right to recover seems to be plain.

But the defendant contends that the man who made the contract received the check ; that it was intended for him ; that the money went to him, and so there was no forgery and the bank is not liable.

It would seem that upon so plain a proposition the decisions should be unanimous ; but it is not so. To say that the money was intended for the one who had committed the fraud is simply to say that the fraud was complete. It is a surprising doctrine that, if A. can successfully personate B., he thereby escapes being guilty of forgery in signing B.'s name on a check of C.'s. Of course, C. intended the money

to go to him, as an actual person, but only because he supposed that he was the person whom he represented himself to be. Can the imposition upon C. justify A.'s personation and signature of B.? If C. had sent his check to B. by A., and the latter had written B.'s indorsement thereon, no one would say that it was not forgery. How does it change the case when A. gets the check by making C. believe that he is B.? In one case C. sent it to B., and in the other he supposed that he handed it to B. directly. In both cases it was intended for B.

The plaintiff's counsel has well said, in this case, that any decision to the effect that a bank is protected in paying a check to an imposter who has forged the payee's name on the check, upon the ground that it carries out the actual intent of the drawer, is based upon a manifest fallacy.

Moreover, of what consequence is the intent of the drawer of the check, when the direction is to pay to the party named? He has the right to assume that the bank will pay to the party as directed. In this case the money was intended for Haskell, because his was the only name suggested; he had been looked up and found to be responsible. It is a perversion of words to say that it was intended for Potter, simply because he had fraudulently impersonated Haskell and led the plaintiff to believe that he was Haskell. The plaintiff did not intend to let Potter have money; his check showed he was not to have it, because it was made payable to Haskell. When, therefore, Potter fraudulently indorsed Haskell's name on the check, it was a typical case of forgery. It was a false signature, with intent to deceive.

The defendant relies on *Robertson* v. *Coleman*, 141 Mass. 231, where the suit was by a holder against the maker of a check. The payee had assumed the name of another and obtained the check as the price for stolen property sold by the defendants as auctioneers. The decision was for the plaintiff, and good ground is given for it in the opinion, in this: that the plaintiff was a *bona fide* holder without notice, and that the defendants simply supposed the payee to be Charles Barney, of Swanzey, but not from any false representation

made to them.   Had the opinion stopped there, no case of fraud would have appeared.   But the court put these facts aside as immaterial, and then said   "This was the person intended by the defendants as the payee of the check, designated by the name he was called in the transaction, and his indorsement of it was the indorsement of the payee of the check by that name.   The contract of the defendants was to pay the amount of the check to this person or his order, and he has ordered it paid to the plaintiff."   No authorities are cited in the opinion, but the case has been cited as an authority since.   See *Emporia Bank* v. *Shotwell*, 35 Kan. 360 ; *United States* v. *National Bank*, 45 Fed. 163 ; *Land Title Co.* v. *Northwestern Bank*, 46 Atl. Rep. 420 ; *First National Bank* v. *Am. Exchange Bank*, 49 N. Y. S. C. Ap. Div. 349.

These cases lose sight of the distinction between real and fictitious persons.   In the latter case there is nobody to inquire about ; no one, in fact, misrepresented ; no one in the mind of one party other than the person with whom he is dealing. In the case of a real person, however, one party, having him in mind, satisfies himself about the responsibility of such party and supposes that he is dealing, not with the person who is in fact before him, but with the one whom he has in mind and whom the one before him falsely personates.   Thus in *Mead* v. *Young*, 4 D. & E. 28, it was held that where a bill of exchange got into the hands of one of the same name as the payee, yet, such person, knowing that he was not the person in whose favor it was drawn, was guilty of forgery in indorsing it.

In *Robarts* v. *Tucker*, 16 Q. B. 559, it was held that a banker could not debit his customer with the payment made to one who claimed through a forged indorsement made by the solicitor of the payee.   That was not a case of misrepresentation of persons, but it is referred to in *Vagliano* v. *Bank of England*, 23 Q. B. Div. 243, as having settled the relations between bankers and customers for many years.   This latter case came under the bills of exchange act, and it was held that as the bill was not made to a fictitious or non-existing person, it could not be treated as a bill payable to bearer, and so defendants could not be protected in a payment under a

false indorsement.    Although this last decision was overruled in L. R. App. Cas. 1891, p. 167, on a close division, *Robarts* v. *Tucker*, which was a case of forgery, as this one is, was not overruled.

In *Armstrong* v. *National Bank*, 46 Ohio St. 512, it is held that even where the payee is non-existing the rule making such paper payable to bearer does not apply where the maker, supposing the payee to be a real person and intending payment to be made to such person, is induced by fraud so to draw it.    In *Graves* v. *Am. Exchange Bank*, 17 N. Y. 205, it was held to be forgery for one, not the payee of a bill, but bearing the same name, to indorse and transfer it, knowing that he was not intended as the payee.

The true rule is well stated in the head-notes of *Rogers* v. *Ware*, 2 Neb. 29, as follows :   "If the bill run to a fictitious payee it is as if drawn payable to bearer, and indorsement is not necessary.

"But if it be payable to some person known at the time to exist, and present to the mind of the drawer when he made it, as the party to whose order it was to be paid, the genuine indorsement of such payee is necessary.

"Nor is the case changed by the circumstance that the party who induced the drawer to make such bill defrauded him in so doing."

*Rowe* v. *Putnam*, 131 Mass. 281, is to the same effect, but is not referred to in *Robertson* v. *Coleman*, 141 Mass. 231.

The attention of counsel was called to the negotiable instruments act, Pub. Laws, January, 1899, cap. 674, § 31, which is :

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative ; and no right to retain the instrument or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up forgery or want of authority."

This statute covers this case.    We have referred to authorities because the defendant's counsel so earnestly and ably argued that the act did not alter the law-merchant that it

seemed proper to show that the law in this respect, outside of the act, is in a very unsatisfactory state and that the act is right. We do not think that the act does alter the law as it was when, a few years ago, it seems to have been switched off on a fallacy in some places. One of the advantages of the act is in settling the question. Waiving the question of forgery, about which the cases we have cited differ, the signature in this case is clearly one "made without the authority of the person whose signature it purports to be," and, therefore, it is "wholly inoperative." This being so, the defendant cannot justify its action under it, there being no evidence of any conduct by the plaintiff to mislead the defendant and so to estop his present claim. As the case stood, the plaintiff had ordered money paid to Haskell. The bank had not so paid it. The fact that the plaintiff had been imposed upon did not relieve the bank from its duty to see that the money was paid according to order. The case should have gone to the jury.

New trial granted.

*Irving Champlin,* for plaintiff.
*Tillinghast & Murdock,* for defendant.