## SIMPSON v. DENVER & RIO GRANDE R. CO.

No. 2428.   Decided June 27, 1913 (134 Pac. 883).

1. APPEAL AND ERROR—QUESTIONS PRESENTED FOR REVIEW—GROUND OF ACTION. In an action upon a pay check, issued by a railroad company and cashed by the plaintiff upon a forged indorsement of the payee's name, where the plaintiff does not allege negligence or estoppel on the part of the company, plaintiff cannot claim either on appeal.   (Page 108.)

2. BILLS AND NOTES—DEFENSES AGAINST BONA FIDE PURCHASER—FORGED INDORSEMENT. Where a railroad company delivers pay checks, payable to the order of two of its employees, to impostors representing themselves to be the employees, one who subsequently cashed the checks upon the forged indorsement of the impostors, without notice of the forgery, cannot enforce payment thereof by the company, in the absence of negligence or estoppel on its part.   (Page 108.)

3. BILLS AND NOTES—DEFENSES AGAINST BONA FIDE PURCHASER. A forged indorsement does not pass title to commercial paper, negotiable only by indorsement, either at common law or under Comp. Laws 1907, sec. 1575, providing that where a signature is forged it is wholly inoperative, and no right can be acquired under it unless the party against whom the right is asserted is precluded from setting up the forgery.[1]   (Page 110.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by T. D. Simpson against the Denver & Rio Grande Railroad Company, upon two counts.

---

[1] Warren v. Smith, 35 Utah, 455, 100 Pac. 1069, 136 Am. St. Rep. 1071.

Judgment for plaintiff upon one count, and for the defendant upon the other. Both parties appeal.

Judgment for the defendant affirmed, and judgment for the plaintiff reversed and remanded, for a new trial.

*Van Cott, Allison & Riter* for appellant.

*Zane & Stringfellow* for respondent.

STRAUP, J.

The facts are undisputed. The case was presented on an agreed statement. The substance of it is:

The defendant operated a railroad and had in its employ several thousand employees, who were paid on the 10th of each month for services rendered the previous month. At the end of each month it prepared a pay roll containing the names of the employees, their occupation, places employed, number of days worked, and the amount due. Pay checks were then prepared in which the date, the name of the employee, and the amount due were stated. The paymaster with the pay car, the pay rolls, and checks traveled his district from place to place, and delivered the checks to the employees, who passed through the car to receive them. In October, 1911, the defendant had in its employ two firemen, E. C. Fields and C. B. Rings, who worked on its road between Salt Lake City and Helper, Utah. At the end of that month it owed Fields for services $93.49; Rings $109.75. Their names were on the pay roll and pay checks made out to each. The one to Fields is:

"The Denver & Rio Grande Railroad Co. Roll No. 1540. No. 4. Denver, Colo., November 10, 1911. The treasurer of the Denver & Rio Grande Railroad Co. will pay to the order of C. E. Fields $93.49, ninety-three and 49-100 dollars for services rendered during the month of October, 1911, when countersigned by Freeman Sumner, paymaster. J. W. Gilluly, Treasurer. F. Sumner, Paymaster. No. C368899." The other to Rings is the same, except the sub-

stitution of his name, the number and the amount due him, $109.75. On November 10, 1911, the pay car in charge of the paymaster was at Salt Lake City from 7 o'clock in the morning until 2 o'clock in the afternoon. From repeated deliveries of pay checks the paymaster became personally acquainted with a large number of the employees. Fields and Rings, however, had been in the defendant's employ only since August, 1911. While the paymaster had delivered them two pay checks before, in September and October, still, owing to the large number of employees paid off each month, between 3500 and 4000, he was unable to remember and identify all of them, and did not remember or know Fields or Rings. On November 10, 1911, between the hours stated, between 1700 and 1900 employees at Salt Lake City passed through the pay car for their checks, practically a continuous procession or line. As they approached the paymaster they announced their names, the pay roll was examined, the check selected and delivered to the employee and the date of delivery stamped on the pay roll opposite his name. Between the hours stated two unknown men, impostors, entered the pay car at different times. One of them, preceded and followed by employees, as he approached the paymaster called out the name of E. C. Fields. The paymaster looked at him, but did not in fact know whether he was or was not Fields, but believing that he was, and seeing the name of Fields on the pay roll, selected the check which had been made out for Fields, and delivered it to the impostor representing himself to be Fields. The other impostor, representing himself to be Rings, in like manner obtained the Rings check.

The plaintiff formerly was in the employ of the defendant at Salt Lake City, and had a general acquaintance with its employees at that place; but at and prior to the time in question he was engaged in the saloon business at Salt Lake City and had been in the habit of cashing at their face value a large number of the employees' checks. The impostors in the afternoon of the day they obtained the checks presented them to the plaintiff, and asked him to cash them. They

were strangers to him. He asked them if they were the parties named in the checks, and was told by them that they were. They wholly unidentified indorsed them. The one holding Fields check indorsed it, "E. C. Fiels," the other, "C. B. Rings." The plaintiff paid them the face value of the checks, in ignorance of the fraud practiced on the defendant and of the forgeries of the indorsements. That night the real E. C. Fields, and the next day the real C. B. Rings, presented themselves to the defendant for their pay checks. It, learning of the fraud practiced on it and of the mistake made in delivering the checks to the wrong persons, paid Fields and Rings the full amount of their wages. The plaintiff indorsed the checks the impostors had indorsed to him, and deposited them to his credit with his bank. In due course they were presented to the defendant's treasurer, who refused to honor and pay them. The bank canceled the credit, and the plaintiff brought this action against the defendant on two counts, one on the Fields check, the other on the Rings check. The court gave plaintiff judgment on the Rings check, the defendant on the Fields. This, because of the difference in the indorsements; the Fields check being indorsed by the impostor, "Fiels," not "Fields."

Both the plaintiff and the defendant appeal. There is no claim of bad faith on the part of either. The plaintiff has alleged no negligence nor any estoppel on the part of the defendant. He claims neither in his brief; he did, in a way, claim both in oral argument. His claim, however, can be no broader than his complaint. Nor does the agreed statement contain facts upon which an estoppel may be founded, or from which negligence may be inferred.

The case is thus presented within a very narrow compass. It is, Can the plaintiff, a holder under the forged indorsements of the pay checks, treated by both parties as negotiable instruments, compel the defendant, who is both the drawer and the drawee, to pay him the checks, without allegations and proof of negligence or an es-

toppel on the part of the defendant? That the persons who presented the checks to the plaintiff were impostors, had no right or authority to receive, present, indorse, or transfer them, and that their indorsements were clear forgeries, are conceded propositions; and without allegations and proof of negligence, or an estoppel on the part of the defendant, we think the plaintiff is not entitled to prevail on either count. (*Tolman v. American National Bank,* 22 R. I. 462, 48 Atl. 480, 52 L. R. A. 877, 84 Am. St. Rep. 850; *Harmon v. Old Detroit National Bank,* 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. Rep. 467; *Rolling v. El Paso, etc., Ry. Co.* (Tex. Civ. App.) 127 S. W. 302; *Lieber v. Fourth National Bank,* 137 Mo. App. 158, 117 S. W. 672; *First National Bank v. Farmers' & Merchants' Bank,* 56 Neb. 149, 76 N. W. 430; *Kohn v. Watkins,* 26 Kan. 691, 40 Am. Rep. 336; *Beattie v. National Bank,* 174 Ill. 571, 51 N. E. 602, 43 L. R. A. 654, 66 Am. St. Rep. 318; *Dodge v. National Exchange Bank,* 20 Ohio St. 234, 5 Am. Rep. 648; *Shipman et al. v. Bank S. N. Y.,* 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821.)

The plaintiff, in support of his contention that the defendant, "having permitted the checks by mistake to come into the hands of the impostors," who wrongfully received them, and without authority and by forgery indorsed them "to a *bona fide* holder, is liable to such holder for the payment of the same"—cites: *U. S. v. National Exchange Bank* (C. C.) 45 Fed. 163; *National Bank v. Shotwell,* 35 Kan. 360, 11 Pac. 141; *Crippen Lawrence & Co. v. American National Bank,* 51 Mo. App 508; *Meridian National Bank, etc. v. First National Bank,* 7 Ind. App. 322, 33 N. E. 247, 34 N. E. 608, 52 Am. St. Rep. 450; *Robertson v. Coleman,* 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; *Maloney v. Clark,* 6 Kan. 83; *E. S. Karoly Co. v. Globe Savings Bank,* 64 Ill. App. 225; *Famous Shoe & Clothing Co. v. Crosswhite,* 124 Mo. 34, 27 S. W. 397, 26 L. R. A. 568, 46 Am. St. Rep. 424; *Fiore v. Ladd & Tilton,* 22 Or. 202, 29 Pac. 435; and *McHenry v. Old Citizens' National Bank,* 85

Ohio St 203, 97 N. E. 395, 36 L. R. A. (N. S.) 1111. We think the cases are not applicable for the principal reason that in nearly all of them the person to whom the check or instrument was delivered was the very person whom the drawer intended should present and indorse it and receive the money evidenced by it, or with whom the transaction was had with respect to which the check was given, or where recovery was permitted on the ground of negligence or an estoppel. These elements are not here present. Deliveries were here made of the checks with the intent and purpose that the persons and payees named in the checks, and no other, except upon their valid indorsements, should present them and receive the money evidenced by them. The checks on their face were payable to the order of E. C. Fields and C. B. Rings, and in themselves plainly directed that payment would be made only to them, or to their indorsees, and to no other. Plaintiff knew that. That is what the checks themselves told him. The impostors came to him without title. Plaintiff's title rests absolutely upon their forgeries of the indorsements.

It is well settled that a forged indorsement does not pass title to commercial paper negotiable only by indorsement. (*Warren v. Smith,* 35 Utah, 455, 100 Pac. **3** 1069, 136 Am. St. Rep. 1071). To that effect also is our statute. Section 1575, C. L. 1907, provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

And as plaintiff has no other claim of title it follows he cannot prevail.

That part of the judgment which is in the defendant's favor is therefore affirmed; that in favor of the plaintiff

reversed. The case is remanded for a new trial. Costs to the defendant.

McCARTY, C. J., and FRICK, J., concur.