MISSOURI PACIFIC RAILROAD COMPANY *v.* M. M. COHN
COMPANY.

Opinion delivered May 12, 1924.

1. BILLS AND NOTES—DRAWER OF CHECK DELIVERING TO IMPOSTOR.—
   Where the drawer of a check delivered it to an impostor, believing
   him to be the payee, and the impostor negotiates it to an inno-
   cent third party for value, the drawer is liable to the latter.

2. ESTOPPEL—TWO INNOCENT PERSONS.—Where two parties to a
   fraudulent transaction are equally innocent, the loss should fall
   upon the one who, in law, most facilitated the fraud.

3. BILLS AND NOTES—DELIVERY OF CHECK TO IMPOSTOR.—Where a
   railroad company delivered its check in payment of an employee's
   wages to an impostor who forged the employee's name and
   indorsed it to an innocent purchaser, the company was liable
   to the indorsee for the amount of the check, notwithstanding
   Crawford & Moses' Dig., § 7789, making forged signatures inop-
   erative unless defendant is precluded from setting up the forgery.

4. ESTOPPEL—NEGLIGENCE.—The maker of a check is estopped by
   its own lack of caution in delivering a check to a person intended
   by it as the payee of the check, although he turned out to be
   an impostor.

5. BILLS AND NOTES—DUTY OF PURCHASER TO MAKE INQUIRY.—If a
   purchaser of a check for value possessed facts sufficient to put
   him on notice that the person presenting the check was an
   impostor, he would be required to make further inquiry concern-
   ing his personality; otherwise not.

Appeal from Pulaski Circuit Court, Third Division;
*Marvin Harris,* Judge; affirmed.

STATEMENT OF FACTS.

M. M. Cohn Company sued the Missouri Pacific
Railroad Company in the municipal court in the city of
Little Rock, Arkansas, to recover $51.60 upon a check
issued by said railroad company to G. W. Graham and
indorsed by him in that name to the M. M. Cohn Com-
pany for a valuable consideration. The plaintiff
recovered judgment in the municipal court by default,
and the railroad company appealed to the circuit court.
The case was tried in the circuit court upon an agreed
statement of facts.

It appears from the record that the Missouri Pacific
Railroad Company, during the month of May, 1922, had

an employee in its dining-car service by the name of G. W. Graham, and on May 31, 1922, it issued its check to the order of G. W. Graham for $51.60 for services rendered during the month of May, 1922. The check was given to a person who said his name was G. W. Graham, and who was believed by the railroad company to be the G. W. Graham to whom it owed the amount named in the check as wages, but who was not in fact such G. W. Graham. The impostor to whom the check was delivered took it to M. M. Cohn Company, a dry-goods store in the city of Little Rock, and indorsed it to said company in payment for goods purchased from it, and received the difference in cash. The impostor indorsed it, "G. W. Graham," and the M. M. Cohn Company took the check in good faith, believing him to be the payee named therein. The railroad company refused to pay the check; hence this lawsuit.

The case was tried before the circuit court without a jury, and, from a judgment in favor of the plaintiff for the amount sued for, the defendant has duly prosecuted an appeal to this court.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellant.

1. Title to commercial paper, negotiable only by indorsement, does not pass by a forged indorsement. C. & M. Digest, § 7789; 51 N. E. 602; 82 N. Y. 1; 131 Mass. 281; 136 Am. St. Rep. 1071, 1074; Daniel on Negotiable Instruments, 5th ed., § 1469; 178 S. W. 211; 101 Ark. 7; 148 Ark. 11; 127 S. W. 302; 134 Pac. 883; 28 Am. Dec. 233; 38 Am. Dec. 204; 49 Am. Dec. 315.

2. Appellant is not precluded from setting up the forgery. When appellee purchased the check payable *to the order of* the payee therein, it devolved upon appellee to ascertain that the indorsement was genuine, and took the check at its own peril when it failed to identify the person who presented the check as the real payee therein. The Cureton case, 147 Ark. 312, is not applicable, neither is the Southern Trust Co. case, *Id.* 288, applicable on the facts. The parties here were equally negligent, and should therefore be left where the court finds them.

*John F. Clifford,* for appellee.

1. Some form of delivery is essential to place a negotiable instrument into circulation. The delivery may be by mistake, but, if it is an intentional delivery, whether to the right or wrong person, it is such delivery as starts the instrument on its career into the business world. The intention in parting with the instrument is the test. C. & M. Digest, § 7782; 8 C. J. 204; 120 Ind. 162. Here the railroad agent intentionally and voluntarily delivered the draft in question, with manifest intention to relinquish all power and control over it, placing it into the hands of another, and it is not material whether he mistook this party, thinking him some one else, or not.

2. Is the appellant precluded by its own act from setting up the forgery? C. & M. Digest, § 7789. The negligence of the railroad company is clear. The very act of placing upon a new clerk, recently employed, the responsibility of paying its employees, was an act of negligence, and the failure of this clerk to require identification was also negligence. The burden was on the railroad company to overcome the *prima facie* presumption of valid delivery. Where the drawer of a check delivers it to an impostor, believing him to be the payee named in the check, the indorsement thereof by the impostor is not a forgery, and the drawer is liable to any subsequent *bona fide* holder. Whitley on Bills, Notes and Checks, Negotiable Instruments Law, p. 186, and authorities cited; 147 Ark. 312; Modern Law of Banking, 717, and authorities cited; 27 Utah 222, 228; 90 N. W. 111; 45 Fed. 164; 97 N. E. 395; 61 N. E. 596; 86 Pac. 165; 115 N. Y. Supp. 78.

HART, J., (after stating the facts). The judgment of the circuit court was right. This case is ruled by the principles of law decided in *Cureton* v. *Farmers' State Bank,* 147 Ark. 312. In that case Cureton drew checks payable to A. J. Carmon and delivered them to H. V. Carmon, believing him to be A. J. Carmon. H. V. Carmon forged the name of A. J. Carmon on the checks, and

gave them to some merchants in payment of goods pur-
chased from them.   The checks were presented by the
merchants to the bank upon which they were drawn, and
were paid by it out of funds on deposit to the credit of
Cureton.  Cureton sued the bank to recover the aggregate
amount of the checks, and the circuit court rendered judg-
ment in favor of the bank.  It was there insisted that the
bank ought to be held liable as for a negligent payment
on a forged indorsement.  The court held that this rule
should not apply when a check is issued to one whom the
drawer intends to designate as the payee, and there was
no negligence on the part of the party cashing the check.
The court adopted the rule that, where a drawer of a
check, draft, or bill of exchange has been induced through
fraud to deliver it to an impostor, believing him to be
the person named in the check, draft, or bill of exchange,
and the impostor negotiates the instrument, and receives
payment thereon from an innocent third party, as
between *bona fide* holder and drawer, the latter must
stand the loss.  This is an application of the rule that,
when both parties to a transaction are innocent, and the
loss must fall upon one, it should be upon the one who in
law most facilitated the fraud.  In the application of this
rule, the railroad company, having issued and placed
in the hands of an impostor a negotiable instrument,
which in good faith is cashed by a dry-goods company in
payment of goods purchased from it by such impostor,
ought not to be permitted to repudiate it and compel the
dry-goods company to stand the loss which was made
possible by the railroad company's failing to recognize
its own employee, and delivering his wages to another
person representing himself to be such employee.

It is claimed, however, by counsel for the railroad
company that it is not liable under the provisions of
§ 7789 of Crawford & Moses' Digest, which is as follows:
"When a signature is forged or made without the author-
ity of the person whose signature it purports to be, it is
wholly inoperative, and no right to retain the instru-
ment, or to give a discharge therefor, or to enforce pay-

ment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.''

We cannot agree with counsel in this contention. The statute is not absolute in its terms,. but recognizes the rule laid down above in the concluding part of the section. The right to be relieved where the signature is forged does not obtain under the statute, where the drawer is precluded from setting up the forgery or want of authority.

In the present case the undisputed facts show that the railroad company is estopped by its own lack of caution from denying liability on the check which it issued and put in circulation by delivering it to a person intended by it as the payee of the check, although he turned out to be an impostor.

It cannot be claimed that the plaintiff was negligent in failing to make inquiries about the personality of the party presenting the check. He was the same man to whom the railroad company delivered the check, and, if an agent of the plaintiff had gone with the impostor to the agent of the railroad company, who delivered the check to him, such agent would doubtless have identified the impostor as the payee of the check. In other words, the plaintiff was only required to see that the person presenting the check was the one to whom the railroad company had delivered it as the payee. Of course, if the plaintiff had been in possession of facts sufficient to put it on inquiry that the person presenting the check was an impostor, it would have been its duty to have made further inquiry about the matter.

There was nothing in the present case, however, tending in the remotest degree to warn the plaintiff that the person presenting the check was an impostor. On the contrary, the undisputed facts show that the plaintiff believed him to be the payee of the check. There is some division in the authorities of the courts of last resort of the different States on this question, and counsel for the

plaintiff have cited many of them in support of the holding of the circuit court.

Inasmuch as this court has already settled the question under the principles of law decided in the case above cited, we need not review or cite these cases.

It follows that the judgment of the circuit court must be affirmed.