**SECURITY–FIRST NAT. BANK OF LOS ANGELES v. UNITED STATES.**

No. 8884.

Circuit Court of Appeals, Ninth Circuit.
March 30, 1939.

Rehearing Denied May 10, 1939.

Rehearing denied; MATHEWS, Circuit Judge, dissenting.

Chester E. Cleveland, Jr., of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Ralph E. Lazarus, Asst. U. S. Atty., both of Los Angeles, Cal.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from a judgment in favor of the United States in an action to recover the amount of an adjusted service loan check collected by appellant from the Treasurer.

The findings of the trial court, sitting without a jury, disclose the following situation:[1] In 1925, pursuant to the World War Adjusted Compensation Act (Act of May 19, 1924, 43 Stat. 121, 38 U.S.C.A. § 591 et seq.), the Director of the Veterans' Bureau issued to Staryos Anastasiadis, General Delivery, Los Angeles, California, adjusted service certificate No. 2358929 in the amount of $1045. Staryos Anastasiadis died aboard a ship on May 26, 1928. Information of his death was furnished the Veterans' Administration by his widow on August 24, 1929, although it was not until June, 1931 that the Administration was able to obtain a duly authenticated certificate showing the date and cause of the veteran's decease.

Prior to November 3, 1930, a person purporting to act as Staryos Anastasiadis was in possession of the adjusted service certificate. He also had the discharge papers of the named veteran and was of the general build of the person described in these papers. This person filed with the Veterans' Bureau (presumably at Los Angeles) an application for a loan of $197, signing to the application the name of Staryos Anastasiadis. On November 3, 1930 the Bureau there issued a check on the Treasurer of the United States in the amount applied for payable to the order of Staryos Anastasiadis, General Delivery, Los Angeles, California. This check was signed by the special disbursing agent of the Bureau at Los Angeles. It was mailed to Staryos Anastasiadis at the above address.

Next day a person representing himself as and represented to the manager to be Staryos Anastasiadis entered a store in Los Angeles and purchased a suit of clothes. He thereupon endorsed the above-mentioned check by writing the name of Staryos Anastasiadis, receiving in exchange there-for the suit and a sum (the balance) in cash. The merchant endorsed the check and transferred it to appellant, which in turn endorsed and presented it to the Treasurer of the United States. Prior signatures were guaranteed. Appellant was a depositary of funds of the United States, and payment by the Treasurer was made by crediting appellant's accounts with the amount of the check.

The conclusion of law drawn from these findings was "that the endorsement of the name of the payee on the check in question was forged and that the defendant is liable to return to the Government the amount of the check, plus interest and costs, on an endorser's warranty." The question here is whether this conclusion is supported by the findings.

The rights and liabilities of the parties are to be determined according to the law of the State of California, where the check was delivered and negotiated. United States v. Guaranty Trust Co. of New York, 293 U.S. 340, 346, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651. The Government neither has nor asserts a preferred status. "As against the United States, the rights of the holder of its checks drawn upon the Treasurer are the same as those accorded by commercial practice to the checks of private individuals." United States v. Guaranty Trust Co. of New York, supra, 293 U.S., at page 350, 55 S.Ct. 221, at page 226, 79 L.Ed. 415, 95 A.L.R. 651.

Appellant relies in part on § 3090 (3) of the Civil Code of California, relating to negotiable instruments. This provides that "the instrument is payable to bearer— * * * (3) When it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable."[2] It is argued that the instrument was bearer paper as defined in this statute; hence the original endorsement was unnecessary to pass title and did not constitute a forgery.

The statute is not in point. While the Veterans' Administration had been informed of the death of Staryos Anastasiadis, it was not found that the check was issued with such information in mind. The Bureau has no authority to issue checks payable to fictitious or non-existing persons;[3] and the findings are open to no

---

[1] The facts were stipulated, and the findings follow the wording of the stipulation.

[2] Uniform Negotiable Instruments Law, § 9 (3).

[3] 38 U.S.C.A. § 642 (i), (k).

other construction than that the action of the Bureau was inadvertent. The intention of the drawer is controlling, and the instrument will not be treated as bearer paper unless the drawer actually intended to make it payable to a fictitious or non-existing person. Seaboard National Bank v. Bank of America, 193 N.Y. 26, 85 N.E. 829, 22 L.R.A.,N.S, 499. This principle, announced in the case just cited, appears to have the approval of the California courts. Union Bank & Trust Co. v. Security First National Bank, 8 Cal.2d 303, 65 P.2d 355; Goodyear Tire & Rubber Co. v. Wells Fargo Bank, 1 Cal.App.2d 694, 713, 37 P.2d 483.

Appellant argues, in the alternative, that the so-called "impostor rule" is apposite. If so, the loss must fall upon the drawer. A majority of the courts adhere to the rule that where the drawer delivers a check, draft, or bill of exchange to an impostor as payee, supposing that he is the person he has falsely represented himself to be, the impostor's endorsement in the name by which the payee is described is regarded as a genuine endorsement as to subsequent holders in good faith. United States v. National Exchange Bank, 45 F. 163; Robertson v. Coleman, 141 Mass. 231, 4 N.E. 619, 55 Am.Rep. 471; Uriola v. Twin Falls Bank & Trust Co., 37 Idaho 332, 215 P. 1080. See also authorities collected in the following notes: 22 A.L.R. 1228; 52 A.L.R. 1326; 112 A.L.R. 1435. In cases of this character it is frequently said that the drawer of the instrument has a double intent: (1) He intends to make the instrument payable to the impostor with whom he deals; and (2) he intends to make it payable to the person whom he believes the impostor to be. By the great weight of authority the first is held to be the controlling intent, although a different view has been taken in some of the cases where the payee named was known to the drawer, or where the payee was particularly identified in the instrument, as by some description or title. Consult Brannan's Negotiable Instruments Law, 4th Ed., p. 208. A few courts hold, to the contrary, that the controlling intention is to make the check payable to the person whom the drawer believes the impostor to be. Tolman v. American National Bank, 22 R.I. 462, 48 A. 480, 52 L.R.A. 877, 84 Am.St.Rep. 850; Western Union Telegraph Co. v. Bimetallic Bank,

17 Colo.App. 229, 68 P. 115; Simpson v. Denver Railroad Co., 43 Utah 105, 134 P. 883, 46 L.R.A.,N.S., 1164. In cases taking the latter view the endorsement of the impostor is held to be a forgery, and the drawer is protected. Again, in situations where the impostor was not in the physical presence of the drawer, but through correspondence or by means of forged documents induced the drawer to believe that he was dealing with the individual impersonated, some of the courts have rejected the idea that the drawer intended to make the instrument payable to the impersonator, and have accordingly held the latter's endorsement to be a forgery. This distinction has not met with general approval. [4]

■ The court of last resort in California appears not to have dealt with the subject. However, in Ryan v. Bank of Italy National Trust & Savings Ass'n, 106 Cal. App. 690, 289 P. 863, 864, an intermediate appellate court held, on facts analogous to those of the case at bar, that "where a check is delivered to an impostor as payee in the belief that he is the person to whom or upon whose endorsement it will be paid, the endorsement by such impostor is not a forgery, for the reason that the drawer of the check intends it to be endorsed by the person to whom he delivers it, and the drawee bank is protected." In that case the deception was accomplished by means of agents and the impostor was not personally visible to the drawer of the check. The court observed that there is no "distinction in principle between cases where the check is delivered to the impostor in person and where such delivery is through an intermediary, if the drawer causes it to be delivered to him in the belief that he is the person to whom or upon whose endorsement it will be paid." In the present state of the law in California, Ryan v. Bank of Italy, supra, is persuasive authority. [5] Ruhlin v. New York Life Ins. Co., 304 U. S. 202, 207, 208, 58 S.Ct. 860, 82 L.Ed. 1290; Tipton v. Atchison T. & S. F. R. Co., 298 U.S. 141, 151, 56 S.Ct. 715, 80 L.Ed. 1091, 104 A.L.R. 831.

■ In the case before us it was not found that the negotiations between the impostor and the Bureau were conducted by correspondence. The check, it is true, was delivered through the mails, but it is fairly to be inferred that the swindler in person

---

[4] For an analysis of the cases see 18 Cal.L.Rev. 693; also note in 34 Harvard Law Rev. 76.

[5] Hearing in that case was denied by the Supreme Court of the state August 25, 1930.

made application for the loan. As a condition to the Administrator's making a loan of this kind the statute requires the execution of a note and the delivery of the adjusted service certificate. 38 U.S.C.A. § 642 (b), (i). The finding is that the man impersonating the veteran "filed an application for a loan" and "that at the time he made an application for a loan he signed the name of Staryos Anastasiadis to the application and filed the application with the Veterans' Bureau." Also, that this person was of the "general build" of the man described in the veteran's discharge papers. Thus, although the Bureau had had previous knowledge of the real Staryos Anastasiadis to the extent of having issued to him an adjusted service certificate, it actually dealt in the present instance with the impersonator. Giving effect to the general rule, of which the Ryan case is an illustration, it must be held that the Bureau intended to make the check payable upon the endorsement of the person to whom it was issued.

█ Even if it be assumed that the endorsement in the present instance was a forgery, still, we think, the appellee is precluded from asserting it. In its answer the appellant, by way of affirmative defense, alleged that the Government "is estopped as against this defendant to assert that the endorsement of said check was not, in fact, genuine." § 23 of the Negotiable Instruments Law, Calif.Civil Code § 3104, provides that "when a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." To be added to the circumstances already related there is the further fact that the Bureau had been informed by the widow of the death of the real Staryos Anastasiadis. Plainly, it was the duty of the Bureau to make such note of the information as would call it to attention in any subsequent transaction involving the veteran's certificate. The magnitude of the Bureau's affairs can hardly excuse it from taking precautions so elementary. It set in motion the train of events resulting in the ultimate loss, and we think the facts require the holding that the Government is estopped from questioning the genuineness of the impostor's endorsement. Montgomery Garage Co. v. Manufacturers' Liability Ins. Co., 94 N.J.L. 152, 109 A. 296, 22 A.L.R. 1224; Missouri Pacific R. Co. v. M. M. Cohn Co., 164 Ark. 335, 261 S. W. 895; Citizens' Union Nat. Bank v. Terrell, 244 Ky. 16, 50 S.W.2d 60.

Appellee relies heavily on United States v. National Exchange Bank of Providence, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184, and Onondaga County Savings Bank v. United States, 2 Cir., 64 F. 703. In these cases the Government had issued checks payable to pensioners who were dead. In neither of them was the impostor rule considered, nor does it appear in either that the Government had been notified of the death of the pensioners. These decisions, moreover, must be read in the light of the more recent case of United States v. National Exchange Bank of Baltimore, 270 U.S. 527, 46 S.Ct. 388, 70 L.Ed. 717. Compare United States v. First National Bank & Trust Co., D.C., 17 F.Supp. 611.

█ Appellant's express guaranty of prior endorsements adds nothing to its liability. United States v. Guaranty Trust Co. of New York, supra, 293 U.S., at page 349, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651.

Reversed.

MATHEWS, Circuit Judge (dissenting).

The check in question was drawn by a disbursing agent of the Veterans Bureau on the Treasurer of the United States. Thus, appellee (the United States) was both drawer and drawee of the check. United States v. National Exchange Bank of Baltimore, 270 U.S. 527, 534, 46 S.Ct. 388, 70 L.Ed. 717.

The check was payable to the order of Staryos Anastasiadis. Anastasiadis was dead when the check was issued, but appellee had no knowledge of his death. It had information that he was dead, but it had other information that he was still alive. Being dead, he was, at the date of the check, a "non-existing person," [6] but—that fact being unknown to appellee—the check was not, for that or any other reason, payable to bearer.

The check was issued in response to an application for a loan—a loan to Anastasia-

---

[6] California Civil Code, § 3090(3).

dis. The person who filed the application and signed Anastasiadis' name to it was an impostor. That, however, is immaterial here. The check was not issued or mailed to the impostor. It was issued and mailed to Anastasiadis.

Anastasiadis being dead, the check remained and was at all times the property of appellee. It could not be and was not delivered to Anastasiadis. It could and should have been returned to the Veterans Bureau. Such return was prevented by a thief, who stole the check,[7] forged Anastasiadis' name on the back of it and negotiated it. Appellant, in good faith and for value, acquired the check, endorsed it, presented it for payment, and obtained payment.

The trial court properly concluded that appellant, by its endorsement, had guaranteed the forged endorsement, and that appellee was not estopped to assert the fact that the forgery was a forgery. United States v. National Exchange Bank of Providence, 214 U.S. 302, 310–320, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184; Onondaga County Savings Bank v. United States, 2 Cir., 64 F. 703.

The judgment should be affirmed.

---

[7] The findings do not use the word "thief" or the word "stole," but they do clearly show that someone who was not the owner and was not entitled to possession of the check got possession of it and appropriated it to his own use. This, obviously, was a theft.