## UNITED STATES v. BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N.

## SAME v. ANGLO CALIFORNIA NAT. BANK.

### Nos. 21893, 21894.

District Court, N. D. California, S. D.

Oct. 20, 1942.

Frank J. Hennessy, U. S. Atty., and F. W. Mathewson, Asst. U. S. Atty., both of San Francisco, Cal., for plaintiff.

Louis Ferrari, G. D. Schilling, James S. De Martini, and R. I. McCarthy, all of San Francisco, Cal., for defendant Bank of America Nat. Trust & Savings Ass'n.

Treadwell & Laughlin, Edward F. Treadwell, Reginald S. Laughlin, and A. Thatcher Cook, all of San Francisco, Cal., for defendant Anglo California Nat. Bank.

ROCHE, District Judge.

The plaintiff, the United States of America, has brought an action against the Bank of America National Trust and Savings Association to recover the sum of $618.98, representing the proceeds of a check drawn on the Treasurer of the United States and collected by the defendant Bank from the Treasurer, together with interest. In a companion case the United States of America, as plaintiff, has brought an action against the Anglo California National Bank to recover the sum of $4,068.46, representing the proceeds of three checks drawn on the Treasurer of the United States which were collected by that defendant from the Treasurer, together with interest. The two cases were submitted to the Court upon stipulations of facts which, briefly, are as follows.

The United States employed one Harry S. Howlett as an accountant in the Sacramento office of the Department of Agriculture. His duty was to audit, certify and approve for payment claims for indemnity made by owners of cattle condemned and slaughtered under the tuberculosis eradication program. Treasury checks were issued by the Disbursing Officer in San Francisco for the claims so approved. In violation of the prescribed procedure, a number of blank appraisal forms signed by the veterinarians who conducted the cattle testing program were kept on hand in the Sacramento office. Howlett secured some of these forms, completed them with names and addresses of non-existent persons as owners, and filled out and certified for payment the vouchers that authorized the issuance of the checks. Pursuant to such authority the United States, through its Disbursing Officer, drew and mailed treasury checks addressed to D. C. Long, General Delivery, Lodi, California, R. D. Stone and John Sprague, P. O. Box 1676, Sacramento, and James Hansen, Room 342 Clunie Hotel, Sacramento. Howlett lived at 342 Clunie Hotel. He secured the other checks by renting Box 1676 and calling at General Delivery, Lodi. After indorsing the checks with the names of the payees he cashed the one drawn to Long at the Sacramento Branch of the Bank of America, without any further indorsement. The remaining three checks, indorsed by him, he cashed at the Capital National Bank where he had an account. The four checks, totalling $4,-687.44, were subsequently cleared through defendants and paid by the plaintiff, as drawee, through the Federal Reserve Bank. These transactions covered a period of slightly over a year. Plaintiff discovered the fraud on August 20, 1936, but waited two and a half years before notifying the defendants or demanding payment. Upon the defendants' refusal to pay the plaintiff took no further steps for an additional two and a half years, at the end of which time these suits were filed. Five years thus elapsed between the date of the discovery of the fraud and plaintiff's efforts to assert whatever rights it might have.

■ The law of California, where the checks were delivered and negotiated, determines the rights and liabilities of the parties. United States v. Guaranty Trust Co. of New York, 293 U.S. 340, 346, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651; Security First Nat. Bank of Los Angeles v. United States, 9 Cir., 103 F.2d 188, 191.

■ Under this law the defendants were general indorsers, having indorsed the checks without qualification, and as such are liable on their implied warranties unless the checks were bearer paper or, alternatively, unless the plaintiff is precluded from setting up the forgeries.

■ Section 3090(3) of the Civil Code of California provides that the instrument is payable to bearer "When it is payable to the order of a fictitious or non-existent person, and such fact was known to the person making it so payable." That the "person making it so payable" need not be the one who does the actual mechanical act of drawing the instrument is settled. Goodyear Tire and Rubber Company of California v. Wells Fargo Bank and Union Trust Company, 1 Cal.App.2d 694, 37 P. 2d 483; Union Bank and Trust Company of Los Angeles v. Security-First National Bank of Los Angeles, 8 Cal.2d 303, 65 P. 2d 355. The intent of such person, acting within the scope of his employment, even though fraudulently, will be attributed to his principal under familiar agency rules. Bartlett v. First National Bank, 247 Ill. 490, 93 N.E. 337; American Hominy Co. v. National Bank, 294 Ill. 223, 128 N.E. 391; Phillips v. Mercantile National Bank, 140 N.Y. 556, 35 N.E. 982, 23 L.R.A. 584, 37 Am.St.Rep. 596; Snyder v. Corn Exchange National Bank, 221 Pa. 599, 70 A. 876, 128 Am.St.Rep. 780. See, also, 25 Cal. L.Review 616. In the instant cases it appears from the stipulated facts that the Disbursing Officer who actually drew the checks depended entirely upon vouchers certified by Howlett and countersigned by the Director and Assistant Director for his authority to do so. It further appears that the counter-signatures were routine, that upon Howlett, as auditor, rested the responsibility for checking and approving the claim. His was the operative signature. Under these circumstances Howlett might well be considered the "person making it so payable" within the meaning of the California Code section and his intention, therefore, would bind his principal, the United States. These four checks would then be bearer paper, negotiable by delivery only.

If the Disbursing Officer's instant intent controls, the so-called "impostor rule" must be considered. The parties stipulated that the Disbursing Officer who signed the checks did not intend to make them payable to fictitious or non-existent persons. He must, then, have intended to make them payable to real persons who would receive them at the addresses given in the vouchers and upon whose indorsements they would be paid. When Howlett secured these checks by causing the plaintiff to deliver them to him through its agency, the post office, he must be considered an impostor, under the principles laid down in Security-First Nat. Bank of Los Angeles v. United States, supra, 103 F.2d 188, and the plaintiff precluded from showing that the indorsement of the impostor is a forgery.

■ Even if neither of the foregoing theories were applicable the Government might well be barred by its long delay in notifying the defendants after discovery of Howlett's fraud. When the United States issues commercial paper it does so on the same basis as any individual and with no special privileges. Cooke et al. v. United States, 91 U.S. 389, 398, 23 L. Ed. 237. And while it will not be bound by the state statute of limitations, like any other litigant it may be guilty of laches. United States v. National Exchange Bank of Providence, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184; Ladd and Tilton Bank v. United States, 9 Cir., 43 F.2d 665; United States v. First National Bank & Trust Co., D.C., 17 F.Supp. 611. Laches is a valid defense if the delay appears to have prejudiced the defendant. The record shows that the United States discovered the forgeries on August 20, 1936, and delayed almost two and a half years before even notifying the defendant banks. Then ensued a further two and a half years before the institution of suits. While the parties have stipulated that Howlett, if called as a witness, would testify that at no time since discovery of his fraud has he been financially responsible, the Court cannot assume from that alone that the defendants' rights were not prejudiced. Prompt notification would have enabled the defendants to pursue whatever course each then thought possible. This they had a right to do.

■ Nor is the plaintiff's position improved by the fact that gross negligence of its own agents facilitated the fraud. Security-First Nat. Bank of Los Angeles v. United States, supra, 103 F.2d 188. Appraisal blanks signed by the field veterinarians, as well as blanks signed by owners were kept on hand. Thus the supporting papers Howlett needed in order to pass his

fraudulent vouchers bore signatures that would be recognized as genuine. The tag book in which the numbered tags clipped to the tubercular cattle were to be recorded was not kept up. The tags themselves were kept in a supply room open to everyone. There was no audit or inspection of any kind. While the Court cannot say that Howlett would not have attempted his fraud under other circumstances, he clearly found it much easier as a result of this course of conduct. "When both parties to a transaction are innocent, and the loss must fall upon one, it should be upon the one who in law most facilitated the fraud." Missouri Pac. R. R. Co. v. M. M. Cohn Co., 164 Ark. 335, 261 S.W. 895, 896.

Upon full consideration of all the circumstances, therefore, the Court finds for the defendants and judgment will be entered accordingly, upon findings of fact and conclusions of law. The parties will pay their own costs.