[Civ. No. 4100.   Second Appellate District, Division One.—October 22, 1924.]

## BANK OF ITALY (a Corporation), Appellant, v. FIRST BANK OF KERN (a Corporation), Respondent.

[1] NEGOTIABLE INSTRUMENTS—PAYMENT OF CHECK ON FORGED SIGNA-TURE—LIABILITY OF PAYING BANK.—Where plaintiff bank, after having received for the purpose of collection and having collected from the drawee the amount of a stolen draft, issued and delivered to defendant bank, at the latter's request, a cashier's check for the amount of the stolen draft, and said cashier's check was made "payable to the order of" the person designated as payee in the stolen draft, "being the same person as the payee of said draft hereinbefore mentioned, and payable to no other" person bearing such designated name, "or other person whomsoever," but defendant bank thereafter paid the amount of such cashier's check to an impostor who forged the name of the person designated as payee therein and, after indorsing such check, collected the amount thereof from plaintiff bank, and plaintiff bank was obliged to pay to the drawee and the payee of the stolen draft the amount thereof, defendant bank was liable to plaintiff bank for the amount of the forged cashier's check.

[2] ID.—DEPOSIT OF DRAFT FOR COLLECTION—ISSUANCE OF RECEIPT TO FORGER—RESTRICTIVE RECITALS—ESTOPPEL.—The mere facts that plaintiff bank had received the stolen draft for the purpose of col-

---

1. Forged indorsement of bill or note, note, 49 **Am. Dec.** 315.

Estoppel to contest forged indorsement of bill or note, note, 37 **Am. Rep.** 704.

Liability of bank paying check on forged indorsement to true holder or payee, note, Ann. Cas. 1917D, 1058.

Who must bear loss as between drawer who delivers check to imposter and one who cashes it upon latter's indorsement, note, 22 **A. L. R.** 1228. See, also, 3 **R. C. L.** 542, 544; 4 **Cal. Jur.** 212–215.

lection from the very impostor who had secured from defendant bank the proceeds of the subsequently issued cashier's check, and that plaintiff bank, upon receiving the stolen draft for the purpose of collection, issued to said impostor a receipt for the draft, did not constitute conduct on the part of plaintiff sufficient to mislead defendant bank, so as to estop plaintiff bank from relying upon its right to protection against a payment of the check not made according to its terms, where the receipt issued by plaintiff bank to said impostor, after describing the draft, and after stating that it was received for collection for the account of the person designated as payee therein, contained the recital, "This is intended as a letter of advice only, is not negotiable, and is not to be construed as establishing, directly or indirectly, any credit."

---

(1) 8 C. J., p. 393, sec. 581.   (2) 21 C. J., p. 1133, sec. 134.

APPEAL from a judgment of the Superior Court of Kern County.   T. N. Harvey, Judge.   Reversed.

The facts are stated in the opinion of the court.

Louis Ferrari and Richard Fitzpatrick for Appellant.

C. L. Claflin and Claflin & Lambert for Respondent.

CONREY, P. J.—Action to recover an amount paid by the plaintiff to the defendant on its indorsement of a cashier's check issued by the plaintiff, which check was cashed by the defendant for an impostor who forged the indorsement of the payee's name thereon.

The case was submitted to the court below on an agreed statement of facts.   As thus shown, the facts are as follows: The Bank of New South Wales issued its draft drawn on the Crocker National Bank of San Francisco, payable to the order of E. D. T. Smith.   This draft was mailed to Smith at St. Helena, California.   It was stolen from the mail and was never received by Smith.   Thereafter a man, unknown to plaintiff, presented said draft to plaintiff at Fresno, California, where he represented himself to be the payee, indorsed thereon the name E. D. T. Smith and requested that plaintiff cash the same.   Plaintiff required this man (hereinafter called the impostor) to identify himself as the payee. This he failed to do, and then requested plaintiff to receive the draft for collection, and stated that on payment of the

draft to plaintiff he would identify himself as the payee thereof. Thereupon the plaintiff received the draft for collection and issued to the impostor a receipt showing that the draft had been received by plaintiff for collection from the drawee. Plaintiff indorsed the draft and sent it to the Crocker National Bank, which paid the same and remitted the proceeds to plaintiff. The receipt issued by plaintiff to the impostor described the draft, and after stating that it was received for collection for account of Mr. E. D. T. Smith, further stated: "This is intended as a letter of advice only, is not negotiable, and is not to be construed as establishing, directly or indirectly, any credit."

Thereafter the impostor presented said receipt to the defendant First Bank of Kern, at Bakersfield, and requested that defendant obtain for him from the plaintiff the proceeds of said draft. Defendant forwarded said receipt to the plaintiff, and requested plaintiff to pay to it the proceeds of the draft. Responding to this request, the plaintiff issued its cashier's check, which was (quoting the agreed statement of facts), "payable to the order of E. D. T. Smith, being the same person as the payee of said draft hereinbefore mentioned, and payable to no other E. D. T. Smith, or other person whomsoever, in the sum of $846.65, being the amount of the proceeds of said draft, and forwarded the same to the defendant." The defendant received said cashier's check and delivered it to the impostor, who indorsed thereon the name of the payee thereof, to wit, E. D. T. Smith. The indorsement of the name of the payee, E. D. T. Smith, upon said draft was forged, and said indorsement was made by said impostor. The said person to whom the defendant delivered said cashier's check and who indorsed the same, presented said cashier's check to the defendant and requested defendant to cash the same.

At the time when the impostor presented said receipt to the defendant, the teller of the defendant asked him why he did not receive the amount of the draft in Fresno. In reply he made statements (which are contained in the agreed statement of facts), which satisfied the teller that he was the identical person named as payee in the Australian draft. When the cashier's check was paid to the impostor he was paid in cash $500 and he deposited the balance with defendant in a commercial account. Thereafter he withdrew

substantially all of the money. After paying the amount of the cashier's check to the impostor, the defendant indorsed the check and sent it through banking channels to the plaintiff. The plaintiff, relying on the indorsement of the defendant, and relying on the guarantee of the defendant of the indorsement of the payee of the check, duly paid the amount thereof. Thereafter, upon discovery that the indorsement of the payee was forged, the plaintiff notified the defendant thereof, and demanded that the defendant repay the total amount of the check, and offered to return the check to the defendant. Defendant refused, and has not repaid said amount or any part thereof to the plaintiff. Prior to the commencement of this action demand was made upon the plaintiff by the Crocker National Bank of San Francisco and by E. D. T. Smith that plaintiff pay to them the amount of said draft issued by the Bank of New South Wales, upon the ground that the indorsement of the payee on said draft was forged and was not the indorsement of the payee thereof. In response to such demand the plaintiff made the required payment.

On the statement of facts, the substance of which has been set forth herein, the case was submitted to the superior court, which rendered judgment in favor of the defendant. From that judgment the plaintiff appeals.

[1] Appellant contends that it was not bound to pay to defendant the amount of its check on a forged indorsement of the payee's name; that having paid it to the defendant as indorser under the circumstances stated, it is entitled to recover from the defendant, which by its indorsement guaranteed the genuineness of the purported indorsement of the payee. Respondent, on the other hand, contends that for two reasons it is not liable to the plaintiff; *first,* because respondent paid the cashier's check to the person that appellant intended should receive payment; *second,* because appellant is by its own acts and conduct estopped from recovering from respondent. The first of these points is answered by the statement of facts, which admits that the check was issued by the plaintiff payable to the order of Smith, being the same person as the payee of the draft "and payable to no other E. D. T. Smith or other person whomsoever."

[2]   The estoppel contended for by respondent is based upon the claim that by issuing its receipt for the draft, and delivering such receipt to the impostor, plaintiff enabled the impostor to deceive the defendant, and thereby led the defendant into the justifiable assumption that it was authorized by the plaintiff to pay the amount of the cashier's check to the same person who had presented to defendant the plaintiff's receipt.   We think that there is no merit in this claim.   The receipt established no right whatever.   It was merely evidence that the draft had been placed in custody of the plaintiff for collection, and that when collected the proceeds would be payable to E. D. T. Smith, the owner thereof. This was emphasized by the further statement in the receipt that it was not negotiable, and was not to be construed as establishing, directly or indirectly, any credit.   Such a receipt or letter of advice could not give to any other bank or person authority to assume that the holder thereof was the E. D. T. Smith to whose order the draft was payable.   That this was clearly understood by the defendant is shown by its own conduct when it questioned the impostor and examined his statements and the other evidence which he presented (as shown in the statement of facts), before it complied with his request that it collect from plaintiff the proceeds of the draft.

In 22 American Law Reports, at page 1228 et seq., there is an annotation under the title, ''Who must bear loss as between drawer who delivers check to an imposter and one who cashes or pays it upon latter's indorsement.''   This note classifies numerous cases on the subject, including those discussed by counsel in their briefs in this case.   It should be observed, however, that in the case at bar the drawer of the cashier's check did not deliver it to the impostor, but did deliver it to the defendant.   The only argument against the plaintiff in this respect is directed to the fact that it delivered *the receipt* to the impostor.   The majority of the cases wherein it appeared that the check was delivered by the drawer to the impostor have been decided against the drawer of the check.   In those cases it was held, in effect, that under the circumstances shown, the impostor's subsequent indorsement of the paper in the name by which the payee was designated therein, is to be regarded as a genuine

indorsement so far as the rights of subsequent parties who deal with the paper in good faith are dependent thereon.

But we are of the opinion that there is nothing in the conduct of the plaintiff herein which brings it within the theory or the rule of those decisions. Section 3104 of the Civil Code of California reads as follows: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." In *Tolman* v. *American National Bank*, 22 R. I. 462 [84 Am. St. Rep. 850, 52 L. R. A. 877, 48 Atl. 480], the court quoted a section of the Negotiable Instruments Act of Rhode Island, which is identical with our Civil Code, section 3104, and said: "The statute covers this case . . . Waiving the question of forgery, about which the cases we have cited differ, the signature in this case is clearly one 'made without the authority of the person whose signature it purports to be,' and therefore it is 'wholly inoperative.' This being so, the defendant cannot justify its action under it, there being no evidence of any conduct by the plaintiff to mislead the defendant, and so to estop his present claim. As the case stood, the plaintiff had ordered money paid to Haskell. The bank had not so paid it. The fact that the plaintiff had been imposed upon did not relieve the bank from its duty to see that the money was paid according to order." So here, since in our opinion the issuance of the receipt does not constitute evidence of any conduct by the plaintiff sufficient to mislead the defendant, and since there is no other evidence of conduct of plaintiff tending to mislead the defendant, we find in the case nothing that can estop the plaintiff from relying upon its right to protection against a payment of the check not made according to its terms, that is to say, not made upon the order of the genuine E. D. T. Smith.

The judgment is reversed.

Houser, J., and Curtis, J., concurred.