## UNITED STATES *v.* ONONDAGA COUNTY SAV. BANK.

*(District Court, N. D. New York.   July 5, 1889.)*

1. **NEGOTIABLE INSTRUMENTS—DRAFTS—INDORSEMENT.**

    False vouchers, purporting to be signed by W., (who was then dead,) and fraudulent affidavits and proofs in due form were presented to a pension agent of the United States, and he drew two drafts on the treasury in favor of W., the drafts having a notice on the back that the "payee's indorsement on this check must correspond with signature to the voucher for which the check was given." The drafts, with forged indorsements of W.'s name, were in good faith cashed by defendant, and by it indorsed and paid by plaintiff, the United States. Two years later plaintiff discovered the fraud, and within three days notified defendant, with a demand for the amount of the drafts, but refused to return the drafts to defendant when paid. *Held*, that plaintiff could recover the amount.

2. **SAME—LIABILITY OF INDORSER—LACHES.**

    Plaintiff was not chargeable with negligence in not discovering the fraud immediately, nor in failing to discover the death of W. prior to issuing the vouchers and drafts.

3. **SAME—REPRESENTATIONS AS TO PAYEE.**

    There was no implied assertion, in the act of issuing the drafts, that the payee was living.

4. **SAME—SPECIAL PROVISIONS.**

    The notice on the back of the drafts did not change the legal character of defendant's indorsement.

5. **SAME—RETURN OF DRAFT TO INDORSER.**

    Plaintiff was under no legal obligation to return the drafts to defendant on an offer of payment thereof by the latter.

At Law.   On motion for new trial.

This is an action to recover money paid by plaintiff to defendants under a mistake of fact.   On the 25th of July, 1882, a pension certificate was issued to Alma Wood, as mother of Elias A. Wood, who died in the war of the Rebellion.   On the 3d of August false vouchers, purporting to be signed by Alma Wood, and accompanied by a fraudulent affidavit and certificate, were presented to the United States pension agent at Syracuse.   On the same day the pension agent drew two drafts, for $1,000 and $924.80, respectively, upon the assistant treasurer of the United States, payable to the order of Alma Wood, and mailed them to her address at Constantia, N. Y.   On the back of the drafts is the following indorsement:

"Payee's indorsement on this check must correspond with signature to the voucher for which the check was given.   If the payee cannot write, his or her mark should be witnessed, and the witness state his or her residence in full."

Alma Wood died July 8, 1882.   Her signature upon the vouchers and drafts was forged.   On the 8th of August the drafts with the forged indorsements, and bearing also the indorsement of Sylvester Wood, the husband of Alma Wood, were presented at defendants' bank, and cashed by them.   On one of the drafts appears an indorsement indicating that the signature of Alma Wood was identified by one John O'Brien, an attorney, who was interested in obtaining the pension, and who at the time

was a depositor in the bank. The money was paid to Sylvester Wood, who received $924.80 in cash, and was given credit on the books of the bank for the remaining $1,000. On the following day the drafts were paid at the sub-treasury to the defendants, having been indorsed by them. In the spring of 1884 the officers of the pension department discovered the forgery. The defendants were notified three days thereafter, and demands were made for a return of the money. The defendants offered to refund, provided the drafts were surrendered. This offer was declined. The defendants insist that the plaintiff was negligent in issuing the drafts after the pensioner's death, and that they had a right to rely upon the implied assertion that the payee of the drafts was a living person. They also insist that the publication of the notice upon the drafts operated to limit the effect of defendants' indorsement to that of a simple guaranty that the payee's signature on the drafts and on the receipt corresponded. It is further argued for the defendants that the plaintiff cannot recover because of the refusal to surrender the drafts which were necessary to enable them to collect from those responsible for the forgery. The action was tried at the May term, and a verdict *pro forma* was directed for the plaintiff. The defendants now move for a new trial upon the exceptions taken, and on the ground that the verdict is against the evidence, inequitable and contrary to law.

*William B. Hoyt*, Asst. Dist. Atty., for plaintiff.

*Charles L. Stone*, for defendants.

COXE, J., (*after stating the facts as above.*) The law applicable to this controversy is plain. Money paid under a mistake of fact may be recovered back. Negligence of the plaintiff in making the mistake does not give the defendant the right to retain what is not his, unless such negligence has so misled and prejudiced him that it would be inequitable to require him to refund. A party who transfers a bill of exchange by indorsement warrants that the instrument is genuine, and is liable upon the warranty if any of the names prior to his own are forged. *Bank of Commerce* v. *National Mechanics' Banking Ass'n*, 55 N. Y. 211; *White* v. *Continental Nat. Bank*, 64 N. Y. 316; 1 Edw. Bills, §§ 242, 273, 274; 2 Pars. Notes & B. 597. There are exceptions to this rule, but the facts do not bring the defendants within any of them. The rule itself has long been recognized as a fundamental principle of commercial law, and should not be departed from upon slight and unsubstantial grounds. The burden of proving facts which take the case out of the general rule is upon the defendants. *Mayer* v. *Mayor*, 63 N. Y. 455. Negligence in discovering and giving notice of the forgery is pleaded in the answer, but the point is not argued orally or in the brief. The forgery was of such a character that the plaintiff could not have discovered it immediately. Within three days after it was discovered notice was given. The plaintiff discharged its obligation to the defendants in this regard. The plaintiff was no more in fault than the defendants in failing to ascertain the truth. "Where each party enjoys only the same chance of knowledge, no case demands anything more than reasonable

diligence in giving notice, after a discovery of the forgery. * * * Both parties are equally ignorant, the one being no more guilty of neglect than the other. Indeed, neither being negligent, but both being imposed upon under the exercise of ordinary diligence." *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230; *Weisser* v. *Denison*, 10 N. Y. 68; *Welsh* v. *Bank*, 73 N. Y. 424; *Ellis* v. *Insurance & Trust Co.*, 4 Ohio St. 658. *Bank* v. *Eltinge*, 40 N. Y. 391; 2 Daniel, Neg. Inst. § 1372; 2 Pars. Notes & B. 599; *U. S.* v. *National Park Bank*, 6 Fed. Rep. 852. The proposition that the defendants might have recovered the amount of the conspirators had they been informed of the forgery by the plaintiff at the time, is answered, therefore, by the suggestion that the plaintiff was under no more obligation to discover it than the defendants were; and also by the absence of proof that the conspirators were not liable and responsible to the defendants at the time the notice was actually given. *Troy Bank* v. *Sixth Nat. Bank*, 43 N. Y. 452. The pension was granted, the vouchers were signed, and the drafts issued in the usual course of business. Every requirement of the law was fulfilled. Rev. St. §§ 4764, 4765. The officials of the pension-office were not guilty of negligence in failing to discover the death of Alma Wood prior to issuing the vouchers and drafts. They were justified in accepting and acting upon the vouchers and accompanying proofs, signed and verified according to the minute and technical requirements of the statute. They could not be expected to anticipate the formation of an infamous conspiracy, involving several individuals, and consummated only by forgery and fraud of the boldest character. There was no implied assertion that the payee was living. The legal character of the transaction is not changed because the actors were government officers. It would be a novel proposition that a debtor who mails a draft to the order of his creditor must lose the amount if the draft is paid on a forged indorsement, should it transpire that the creditor died prior to the mailing. The notice on the back of the drafts does not change the legal aspect of the transaction. It was intended to insure greater accuracy and precision. It was for the benefit of all who might thereafter deal with the drafts. The plaintiff lost no rights because of the endeavor to have the signature on the voucher and the check correspond, and is not estopped from asserting that both signatures are forgeries. Besides, the defendants did not rely upon the notice, and were not misled by it. They required the identification of the payee's signature, and indorsed a minute of the fact that it was so identified on the draft immediately below that signature. Both the plaintiff and the defendants were bound to inquire into and satisfy themselves of the genuineness of the indorsement. The defendants recognized this obligation, and proceeded to make the inquiry, and, by indorsing the draft, warranted the prior signatures. The demands for the return of money are proper, and sufficient in form. The refusal to surrender the drafts after the defendants had agreed to repay the money, was, perhaps, ill-advised and discourteous, but the defendants lost no advantage by reason thereof. There was no legal obligation to return the drafts. The defendants had

a right of action against the conspirators independent of the drafts. *U. S. v. National Park Bank*, 6 Fed. Rep. 852. After a diligent search no authority has been found where a recovery has been refused upon the facts here presented. Two cases are reported in which the defendant succeeded. *U. S. v. Clinton Nat. Bank*, 28 Fed. Rep. 357, and *U. S. v. Central Nat. Bank*, 6 Fed. Rep. 134. But in the former case there was a delay of 12 years in giving notice after knowledge of the forgery, and in the latter case there was no notice of any kind. The motion to set aside the verdict is denied. The plaintiff is entitled to judgment for $1,924.80, and interest from September 15, 1884.