## UNITED STATES v. MERCANTILE NAT. BANK AT DALLAS.

No. 1862.

District Court, W. D. Louisiana, Shreveport Division.

Sept. 3, 1946.

Malcolm E. Lafargue, U. S. Atty., and William J. Fleniken, Asst. U. S. Atty., both of Shreveport, La., for plaintiff.

Cook, Clark & Egan, of Shreveport, La., for defendant.

PORTERIE, District Judge.

Bertha Smith posed as Beulah Mitchell Gibbs, unremarried widow of Ben Gibbs, Jr., and made an application to the Veterans' Administration, which was approved. The checks were made payable to "Mrs Beulah Mitchell Gibbs as the unremarried widow of Ben Gibbs Jr. 1224 Taylor Street Shreveport Louisiana" appearing in four successive lines. This payee was legally due the money. Bertha Smith endorsed four checks of $25, signing with her mark, with two witnesses with given addresses, as "Beulah Mitchell Gibbs." A large check of $5,875 she signed again by mark with two witnesses with addresses, but there was the

language added below the name: "as the unremarried widow of Ben Gibbs, Jr., 1224 Taylor Street, Shreveport, Louisiana."

The checks were cashed at the Continental American Bank and Trust Company at Shreveport by Bertha Smith, and this bank then forwarded them for collection, after guaranteeing the endorsements, to the Mercantile National Bank of Dallas, Texas, which in turn received the money from the Government, through the Federal Reserve Bank of Dallas, Texas.

The contention of the defendant is that the administration was dealing with the flesh and blood person, Bertha Smith, and intended to approve the application of that person with whom it was dealing; that the checks were delivered to that identical person, who cashed them at the bank; that the mistake was made in the first instance by the Government itself.

It maintains that the cases we use as deciding the instant case, to-wit: National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383, 386, Clearfield Trust Co. v. United States, 318 U.S. 363, 744, 63 S.Ct. 573, 87 L.Ed. 838, and United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184, are not controlling; that the controlling case is United States v. First National Bank, Albuquerque, N. M., 10 Cir., 131 F.2d 985, 1942, writ of certiorari denied 318 U.S. 774, 63 S.Ct. 830, 87 L.Ed. 1144.

The New Mexico case is not mentioned in the numerous cases cited in the Clearfield Trust Company and the National Metropolitan Bank cases; it could not be mentioned in the National Exchange Bank case because this case was much earlier, in 1909. The New Mexico case was not cited in the briefs of either side in the National Metropolitan Bank case. We have it from counsel by letter that the New Mexico case was not even orally discussed before the Supreme Court. Grant all this—it does not make of the New Mexico case a rule separate and apart, as we shall now show.

■ The New Mexico case, because a certiorari was denied in it, does not achieve parity of consideration with the three cases we cite as controlling, for from the case of Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 51 S.Ct. 498, 499, 75 L.Ed. 1142, we have: "It is urged that a certiorari was denied (269 U.S. 578, 46 S.Ct. 104, 70 L.Ed. 422) in Central of Georgia Ry. Co. v. Davis, 5 Cir., 7 F.2d 269, which seemed to qualify the doctrine of the Berkshire Case [Southern Pacific Co. v. Berkshire, 254 U.S. 415, 41 S.Ct. 162, 65 L.Ed. 335]. But 'The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times.' United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361."

■ Moreover, the Supreme Court has finally and definitely held that the drawer of a check is under no duty to a cashing or presenting bank to exercise diligence in the issuance thereof, such that no possible mistake may occur or that no negligence of any kind may exist. In the instant case, the check was issued conformably to law, and payable to the right person, Beulah Mitchell Gibbs. To rule that the drawer should have gone further and discovered that Bertha Smith, the forger, was not Beulah Mitchell Gibbs is not the law. Counsel for the defendant says there is no forgery in the instant case; what else can the signing by Bertha Smith of Beulah Mitchell Gibbs' name when collecting the check at the bank's window, be but forgery?

Grant that the Governmental agency may be misled and tricked; but does that annul its right to depend upon the guarantee by the cashing bank when its warranty on the back of the check in the language "All prior endorsements guaranteed" is untrue?

The specifications of error in the two cases (Clearfield Trust Company Case and the National Metropolitan Bank Case) upon which we rely cover fully and clearly the principle of the instant case. The fact that the New Mexico case was omitted, in briefs submitted as well as in oral argument, and in the opinions of the two Supreme Court cases, supra, does in no way leave an opening for us to make an exception of the instant case. The three

cases we cite hold that by the Federal rule and the overwhelming weight of State authority, the drawer-drawee owes no duty to a presenting bank to discover forgery of the payee's endorsement.

Nor do the facts of the instant case permit us to take it from the rule; the Supreme Court reviewed the National Metropolitan Bank case because of the divergence of it in the Circuit Court, 79 U.S. App.D.C. 54, 142 F.2d 474, and the case of United States v. First National Bank of Chicago, 7 Cir., 138 F.2d 681. But this latter case has the same facts practically as the instant case.

The National Metropolitan case, supra, 65 S.Ct. at page 355, says: "Only recently, in Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, we had occasion to consider rights and liabilities of the government which stem from the issuance and circulation of its commercial paper. Our conclusion was that legal questions involved in controversies over such commercial papers are to be resolved by the application of federal rather than local law and that, in the absence of an applicable Act of Congress, federal courts must fashion the governing rules. Some of the questions petitioner argues here are foreclosed by the Clearfield decision. There we held that presentation of a government check to it for payment with an express guaranty of prior endorsements amounts to a warranty that the signature of the payee was not forged, but genuine. Breach of that warranty, we said, by presenting a check on which the payee's signature is a forgery, gives the government a right to recover from the guarantor when payment is made. The checks in the instant case were presented to the government by the bank bearing forged endorsements of the payee's name, and a specific guaranty by the bank. Under the Clearfield rule, therefore, the government should recover, unless other principles here invoked exempt it from liability."

This we must obey; so this phase of the motion of the defendant for a summary judgment fails.

The second phase of the motion for a summary judgment by the defendant is in the following language: "2. That this claim is barred, insofar as it is founded upon the check for $5,875.00, for the reason that no proceeding was commenced thereon within six years after the presentation of the same to the Treasurer of the United States, and no notice of the claim was given within that period to this defendant."

The items of evidence in support of the motion are:

(a) An affidavit by the assistant cashier of the defendant substantially asserting that Bertha Smith posed as Beulah Mitchell Gibbs in making application to the Veterans Administration as the unremarried widow of Ben Gibbs, Jr.; that the Administration accepted Bertha Smith as Beulah Gibbs and delivered to her, made payable, however, to the order of Beulah Mitchell Gibbs, the five checks at issue; that Bertha Smith in person posing as Beulah Mitchell Gibbs, collected the checks at the defendant's bank, endorsing the checks as Beulah Mitchell Gibbs.

(b) A letter, dated May 29, 1944, by the assistant cashier of the Federal Reserve Bank to the Mercantile National Bank, Dallas, Texas, advising that there was before the General Accounting Office, Washington, D. C. "a matter involving the wrongful negotiation of the checks described below:" (and here is given the detailed description of the five checks), and the letter then closing with the following two paragraphs:

"An investigation by the Veterans Administration disclosed that the checks were issued on a fraudulent application by Bertha Smith posing as Beulah Mitchell Gibbs and that she received and negotiated the checks in question. You are requested to advise your endorser of the improper negotiation.

"Since the involved checks and related papers are being transmitted to the Treasurer of the United States for reclamation, any information you may be able to obtain relative to their negotiation will be appreciated."

The other evidence used by the defendant is gleaned from the record:

(1) That the five checks were paid by the Federal Reserve Bank to the Mer-

cantile National Bank at Dallas between the dates of May 25, 1938 (the $5,875.00 check) and October 1, 1938 (the last of the four $25 checks). Also, all that the checks indicate, physically, such as date of issuance, of payment, etc.

(2) That plaintiff's suit was filed May 16, 1946.

Then, of course, movant in support of this phase of its motion for summary judgment refers to Section 1, Act of March 6, 1946, Public 308, 79th Congress, 31 U.S.C.A. §§ 129–131, reading as follows: "No proceeding in any court shall be brought * * * by any agency or official of the United States to enforce the liability of any endorser, transferor, or depositary, or financial agent, arising out of a forged or unauthorized signature or endorsement upon or alteration of any check, checks, warrant, or warrants issued by the Secretary of the Treasury, the Postmaster General, the Treasurer and Assistant Treasurers of the United States, or by disbursing officers and agents of the United States, unless such proceeding is commenced within six years after the presentation to the Treasurer of the United States or other drawee of such issued checks or warrants for payment of such check, checks, warrant, or warrants, or unless within that period written notice shall have been given by the United States or an agency thereof to such endorser, transferor, or depositary, or financial agent of a claim on account of such liability. Unless a court proceeding shall have been brought or such notice given within the period prescribed herein, any claim against such endorser, transferor, or depositary, or financial agent on account of such liability shall be forever barred: Provided, That in connection with any claim presented to the General Accounting Office within the time limitation prescribed by section 2 of the Act of June 22, 1926 (44 Stat. 761; U.S. C.A., title 31, sec. 122), the period within which such a proceeding may be brought or such notice given shall be extended by an additional one hundred and eighty days, and unless such notice shall be given or a court proceeding brought within such extended period any claim against such

endorser, transferor, depositary, or financial agent on account of such liability shall be forever barred."

■ "As a general rule—a fundamental rule for the construction of statutes— statutes of limitations will not be given a retroactive effect, unless it clearly appears that the Legislature so intended." Limitations of Actions, 37 C.J. § 10, page 691.

The statute we are to interpret is specific in its application and relates only to actions by the Government under special conditions.

■ The statute is remedial in character; House Report No. 101,. February, 1946, calls it "ameliorative legislation." It is a command of the Congress to its agencies and officers in the clear opening language: "No proceeding in any court shall be brought in the United States or by any agency or official."

The following language is taken from a House Report on the Act: "When it is considered that the policy of terminating liability on claims by the Government against individuals and corporations has been established in the tax laws—26 U.S. C. §§ 275–277, 26 U.S.C.A. Int.Rev.Code, §§ 275–277—and as to sureties on the bonds of disbursing officers (usually corporate sureties receiving commensurate compensation for the risk of loss involved)—6 U.S.C. § 5, 6 U.S.C.A. § 5 — the committee feel it is fair and reasonable that such policy be extended to relieve banks, merchants and others from liabilities incidentally assumed in the encashment of Government checks or warrants."

The Report further says: "In recent years large numbers of Government checks have issued to payees who after the termination of the war will return to or move to localities other than where the checks were cashed. With the passage of time such payees will become increasingly difficult to locate. Likewise, merchants and others through whom the checks have passed may either no longer be available to the banks or for various other reasons may be in such position as to render whatever right of redress the banks may

have against such individuals of no practical value."

The language of the act does not say that after the passage of six years from the date of its enactment "no proceeding in any court shall be brought," etc. The practical necessity of the measure is to protect the banks of the nation which have engaged so helpfully in the Government achieving quick and immediate payment. We cannot discern any motive from the circumstances, nor any language in the Act that would give it merely a prospective effect; we do believe the Act, from its language, and from its necessarily remedial character, to be retroactive.

It would seem that as the Supreme Court held the banks more strictly on their guarantee of prior endorsements (Clearfield case—March 1, 1943), the Congress fixed a limit on the time of their accountability, (Public Law 308—March 6, 1946).

Granting the Act to be retroactive, it has only effect as to the check of $5,875 —based upon a lapse of six years between the date of filing of the suit May 16, 1946, and of payment by the Treasurer of the United States May 25, 1938, eight years "after the presentation to the Treasurer of the United States."

But what about the latter part of Section 1 of the Act, making a particular exception to liability being forever barred? "Provided, That in connection with any claim presented to the General Accounting Office within the time limitation prescribed by section 2 of the Act of June 22, 1926 (44 Stat. 761; U.S.C. title 31, sec. 122), the period within which such a proceeding may be brought or such notice given shall be extended by an additional one hundred and eighty days, and unless such notice shall be given or a court proceeding brought within such extended period any claim against such endorser, transferor, depositary, or financial agent on account of such liability shall be forever barred."

And Section 2, 44 Stat. 761, June 22, 1926, 31 U.S.C.A. § 122, reads as follows: "All claims on account of any check, checks, warrant, or warrants appearing to have been paid shall be barred if not presented to the General Accounting Office within six years after the date of issuance of the check, checks, warrant, or warrants involved."

There is no reference by either side as to whether or not there is "connection with any claim presented to the General Accounting Office," and if connected, to the date on which the claim was presented to the General Accounting Office, etc. We are unable to tell whether or not this provision be applicable for the want of facts. Who had the burden of furnishing these facts? Obviously, the one who made the motion for a summary judgment.

The plaintiff in its complaint asserts a claim upon which relief may be had and remains in court without having to show that the defendant is unable to file a plea as to the limitation of the action by time. The plea of the limitation of the action is personal to the defendant—discretionary with it. So, it follows that it is the full burden of the defendant bank in this case to show that plaintiff's claim does not prevail because it is barred by limitation of time.

We believe Federal Rules of Civil Procedure, Rule 56, 28 U.S.C.A. following section 723c (Summary Judgment) particularly subsection (c) thereof, will uphold our view in the language "show that, except as to the amount of damages, *there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Italics ours.) As we see it, there is want of the material fact as to whether or not the General Accounting Office had anything to do with this claim, and if it did, on what date.

The letter of the Federal Reserve Bank "advising that there was before the General Accounting Office" the wrongful negotiation of the instant check is dated May 29, 1944; payment of the check by the Treasurer was on May 25, 1938; this would give the six years by three days; but the check likely was "presented to the General Accounting Office" before the date of this letter.

Moreover, under Section 122 it is "within six years after the date of issuance of the check." The date of the check is May 20, 1938; comparing that date to the date of the letter, May 29, 1944, would again make the six years—but how long before the letter was written was the claim actually presented to the General Accounting Office? We do not have this in the record.

We have noted that in Section 1 of the Act of March 6, 1946, the time is six years, and that in Section 2 of the Act of June 22, 1926, the period is again six years, and it might be argued that both periods of six years, running concurrently, have expired, and that the extension by an additional one hundred and eighty days is certainly covered by the period of time between the six years in the actual statutory requirement and the actual lapse of eight years, but, as shown in the previous paragraph, we are unable to make ourselves clear—and the burden of clarification is upon the proponent of the motion for summary judgment.

Accordingly, we overrule the motion for summary judgment on this second phase, with the right, however, to defendant (movant in the motion) of amplifying (if it wishes and can) the factual basis for its motion for summary judgment.

Judgment will be signed in keeping with the whole opinion.