Chas. D. Egan, Sidney M. Cook and Clarence L. Yancey, all of Shreveport, La., for appellants.

Malcolm E. Lafargue, U. S. Atty., and W. J. Fleniken, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

### CONTINENTAL–AMERICAN BANK & TRUST CO. et al. v. UNITED STATES.

### No. 11911.

Circuit Court of Appeals, Fifth Circuit.

June 10, 1947.

Rehearing Denied July 7, 1947.

LEE, Circuit Judge.

The United States brought these two suits against appellants, defendants below, on their guarantees of endorsements made on six checks. For the purpose of this appeal the facts of the two suits are identical.

The complaints and affidavits annexed to motions for summary judgment made by the defendants show that one Bertha Smith, posing as Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., made a fraudulent application to the Veterans Administration. An officer of the Treasury drew the six checks on the Treasury of the United States, payable to Beulah Mitchell Gibbs as the unremarried widow. The checks were delivered to Bertha Smith. Bertha Smith endorsed these checks with the name of Beulah Gibbs and received payment on one check from one defendant and on the other five checks from the other defendant. The defendants by endorsement guaranteed the prior endorsements and received payment from the Treasury of the United States through the customary banking channels.

The court below overruled the motions for summary judgment made by the defendants for the reason, insofar as concerns this appeal, that " * * * the Supreme Court has finally and definitely held that the drawer of a check is under no duty

to a cashing or presenting bank to exercise diligence in the issuance thereof, such that no possible mistake may occur or that no negligence of any kind may exist."

As authority for its interpretation of the law, the court below cited National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383, and Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, and stated that United States v. First National Bank, Albuquerque, N.M., 10 Cir., 1942, 131 F.2d 985, writ of certiorari denied 318 U.S. 774, 63 S.Ct. 830, 87 L.Ed. 1144, was no longer good law.

The defendants then filed answers which, insofar as the issues of this appeal are concerned, merely made more definite the facts alleged in the previous motions and affidavits of the defendants. They alleged that the Veterans Administration required identification of Bertha Smith as Beulah Mitchell Gibbs and delivered the checks to Bertha Smith with the intention that the person to whom they were issued should cash them. They also alleged that the defendant banks required identification that she was the person who was intended to cash the checks.

In each case the United States then moved for summary judgment, contending that no genuine issue as to any material fact existed and the plaintiff was entitled to a judgment as a matter of law. The court below granted these motions for summary judgment without expressing reasons therefor but apparently for the reasons set forth upon overruling defendants' motions. From these summary judgments, the defendants appeal.

 The only question we must decide on this appeal is whether the "impostor rule" governs in cases where the United States has issued its paper to an "impostor". The Supreme Court has settled two matters: (1) When the federal government becomes a party to commercial paper, it is bound by the same rules which govern private persons under the same circumstances. Clearfield Trust Co. v. United States, supra. And (2) federal rather than local law governs controversies over commercial paper issued by the government,

and in the absence of an applicable act of Congress the federal courts must fashion the governing rules. National Metropolitan Bank v. United States, supra.

In the absence of an expression by the Supreme Court on the "impostor rule" we believe United States v. First National Bank, Albuquerque, N. M., supra [131 F.2d 987], correctly sets out the federal law:

"It must be conceded however that when the United States becomes a party to commercial paper, it impliedly consents to be bound by the same rules governing private persons under the same circumstances. Cooke v. United States, 91 U.S. 389, 23 L. Ed. 237; United States v. National Exchange Bank of Baltimore, 270 U.S. 527, 46 S.Ct. 388, 70 L.Ed. 717; Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L. Ed. 1434; United States v. Guaranty Trust Co., 293 U.S. 340, 350, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651; United States v. First National Bank of Prague, 10 Cir., 124 F.2d 484. Whatever label we give the rule, whether Federal or state law, it derives its substance from the law merchant, and since New Mexico has not spoken on the question, we are at liberty to assume that its courts as well as the Federal law, will follow the uniform law governing commercial transactions. To that extent, we shall fashion the rule from the 'materials at hand.'

"It is of course patent that if the endorsement of the payee be treated as a forgery, the bank as subsequent endorsee acquired no rights under it, and it is liable on its guaranty unless the United States is by its laches precluded from asserting the guaranty. See Section 23 of the Uniform Negotiable Instruments Act. If however, the so-called impostor rule has application under the facts, there is no forgery, the guaranty is not broken, and the United States cannot recover.

\* \* \* \* \* \*

"Some cases do not accept the thesis upon which the so-called impostor rule is based, United States v. Onondaga County Savings Bank, D. C., 39 F. 259; Onondaga County Savings Bank v. United States, 2 Cir., 64 F. 703; United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665,

53 L.Ed. 1006, 16 Ann.Cas. 1184; United States v. Canal Bank & Trust Co., D. C., 29 F.Supp. 605. Other courts accept it but refuse to apply it under similar facts. United States v. National City Bank of New York, D. C., 28 F.Supp. 144; Cohen v. Lincoln Savings Bank, 275 N.Y. 399, 10 N.E.2d 457, 112 A.L.R. 1424. See also annotations, 22 A.L.R. 1228; 52 A.L.R. 1326. Cases which do not accept or refuse to apply the rule rely primarily on what was said in United States v. National Exchange Bank, supra, which did not mention or recognize the impostor rule under somewhat analogous facts. The decision there rested upon the question of whether the United States should be held to the rule that a drawee or the maker of a check should be held to know the genuineness of its own paper. We think the case must be considered in the light of what was said in United States v. Chase National Bank, 252 U.S. 485, 40 S.Ct. 361, 64 L.Ed. 675, 10 A.L.R. 1401, and United States v. National Exchange Bank of Baltimore, supra. See, also, Security-First National Bank v. United States, 9 Cir., 103 F.2d 188.

\* \* \* \* \* \*

"The facts here bring this case squarely within the impostor rule. It is said that the application of the impostor rule is based upon the intention of the drawer to make the check payable to the identical person with whom he deals, and that since under the statute, the disbursing agent for the veterans' facility had no authority to issue the check to any person other than the true veteran, it cannot be held to have intended to do otherwise. But if the intentions of the disbursing agent are to govern, shall they be discerned by what he thought he was doing because he could not legally do otherwise, or by what he physically and actually did in effecting his purposes and intentions.

\* \* \* \* \* \*

"Government checks are fluently employed in the commerce of the country, and are accepted upon reasonable identification in the regular course of business as other obligations of such character. If banks are to be made to use greater diligence than is shown to have been exercised here, the result is to destroy the free negotiability of the obligations of the United States government. We hold that the so-called impostor rule has application and the government cannot recover."

We find nothing in either the National Metropolitan Bank v. United States or Clearfield Trust Co. v. United States to indicate that the Albuquerque case is not the law in the federal courts. Certiorari was denied in that case 15 days after the Clearfield Trust Co. case was decided. Neither case involved impostors. Both cases affirm the principles of law we apply here: (1) When the federal government becomes a party to commercial paper, it is bound by the same rules which govern private persons under the same circumstances. And (2) federal rather than local law governs controversies over commercial paper issued by the government, and in the absence of an applicable act of Congress the federal courts must fashion the governing rules.

It is true that the Supreme Court in the Clearfield Trust Co. case granted certiorari for the reason that the decision of that Third Circuit case conflicted with the Ninth Circuit case of Security-First National Bank v. United States, 103 F.2d 188. The conflict as shown by the Supreme Court opinion in the Clearfield Trust Co. case concerned the question whether local or federal law governed commercial paper issued by the United States. Neither the Supreme Court nor the Third Circuit discussed the impostor rule.

With respect to the application by the court below of the principles of National Metropolitan Bank v. United States and Clearfield Trust Co. v. United States to the facts of the instant case, we point to the admonition of the Supreme Court at the end of the National Metropolitan Bank v. United States opinion [323 U.S. 454, 65 S.Ct. 356]: "We do not say that there may not be some circumstances, not now before us, under which the government might be precluded from recovery because of conduct of a drawer prior to a guaranty of endorsement. We do hold that negligence of a drawer-drawee in failing

938

to discover fraud prior to a guaranty of the genuineness of prior endorsements does not absolve the guarantor from liability in cases *where the prior endorsements have been forged.*" (Emphasis added.)

The judgments appealed from are reversed, and the cause is remanded for proceedings not inconsistent herewith.

Reversed and remanded.