# UNITED STATES v. CONTINENTAL-AMERICAN BANK & TRUST CO.

# UNITED STATES v. MERCANTILE NAT. BANK OF DALLAS.

## Civ. A. Nos. 1838, 1862.

District Court, W. D. Louisiana, Shreveport Division.

Aug. 24, 1948.

Malcolm E. Lafargue, U. S. Atty. and William J. Fleniken, Asst. U. S. Atty., both of Shreveport, La., for plaintiff.

Cook, Clark & Egan, of Shreveport, La., for defendants.

PORTERIE, Judge.

The opinions in the same cases appearing at 67 F.Supp. 759 (sustaining the government in its motion for a summary judgment) and appearing at 161 F.2d 935 (reversing) should be read first, in order to know what the facts at issue were then and to catch the turn of thought of the instant opinion.

At the opening of the trial on the merits, defendants moved the court to sustain the motions for a summary judgment that the defendant banks had originally filed, but which the court had earlier overruled. Their contention was that, now with the circuit court's expression on the applicable law, and the government being bound by its previous allegations of fact on its motion for summary judgment, the motions of the defendant banks for a summary judgment should be sustained.

There is much support to this claim, but since a mover on a motion for summary judgment, being carried away by his utmost belief in a certain principle of law may grant facts too generously—facts which, in truth, would not be upheld on the trial on the merits, we should demur. It is true that the government in its

motion for summary judgment sustained, now reversed, gave as a reason "that there is now no genuine issue as to any material fact". Also, the government in its pleadings, and particularly in the making of judicial admissions, should be held in the same manner that the private person or corporation is held. Brent v. Bank of Washington, 35 U.S. 596, 9 L.Ed. 547; The Siren, 74 U.S. 152, 19 L.Ed. 129; United States v. O'Grady, 89 U.S. 641, 22 L.Ed. 772; Curtner v. United States, 149 U.S. 662, 13 Sup.Ct. 985, 37 L.Ed. 890; Daitz Flying Corporation v. United States, D.C.N.Y., 4 F.R.D. 372; 31 C.J.S., Evidence, 1085, Sec. 308, 31 C.J.S., Evidence, § 381, page 1170.

On the other hand: a) It might be said that the sovereign is not held by the admission of an agent in a judicial proceeding, even though the agent be the district attorney. b) Fundamentally, in this case, the reversal by the circuit court is a command that the trial on the merits is to be had and that the dominating questions of that trial shall be, (1) what is an impostor and then, from the facts fully developed at the trial and being presented contradictorily, (2) determine whether or not there was an impostor in the instant case.

We said so tentatively at the time the peremptory motion for a summary judgment was made by the defendant banks at the beginning of the trial on the merits when we said: "It would seem then, consequently, that a delineation of the facts would be practically necessary in each case to determine whether or not the impostor rule is applicable".

So, we decline the motion; however, the government's position and its admission will be considered as circumstances of the case on the trial on the merits.

Then, what are the facts established at the trial?

First, we have the government's affidavit admitting the original allegation of defendants' pleadings at the time that they moved for a summary judgment which was accorded by the district court, but reversed by the circuit court. These have been just above recited.

Second, the defendants filed of record a report by the Chief of Section to the Treasurer of the United States, dated December 1, 1944, relative to the checks in controversy, which states:

"It appears from the evidence in the file that the checks were issued on a fraudulent application by Bertha Smith, posing as Beulah Mitchell Gibbs, and that she in collusion with Henry Milton, now dead, received and negotiated the checks".

Third, the deposition of the Legal Assistant to Chief, Life Insurance Claim Division, Veterans Administration, Washington, D. C., shows in detail all the correspondence and the affidavits that were filed showing the marriage license authorizing Beulah Mitchell to marry Ben Gibbs, Jr., shows the want of a return to the registry of the license, but shows that one, Green Ellis, performed such a marriage ceremony; shows that Beulah Mitchell married but once and that was to Gibbs, etc., finally culminating with the decision on law and facts by one, P. L. Betz, Attorney Reviewer, recommending and approving payment.

There is but one conclusion to be made from these government exhibits and that is that the application was thought satisfactory and that eventually the first large check for the deferred and accumulated monthly payments and the subsequent small monthly checks following the large remittance were all mailed and placed in the hands of the person who imposed upon the government.

There are several physical facts to be gleaned from a study of the various documents furnished the government by the impostor which should have warned the government; such as the fact that some bore the purported signature of Beulah Mitchell Gibbs and others did not and the signature then was by mark; the fact that the first inquiry received by the Veterans Administration in 1932, four years prior to the first letter purportedly from Beulah Mitchell Gibbs, showed that Ben Gibbs, Jr. was separated from his wife when he entered the service. Then seven years after the receipt of this information the government having in that

time accepted the impostor's application and issued to her the checks involved in this suit on the strength of the information contained in the letter received in 1932 discontinued payments and began investigation which showed that the real Beulah Mitchell Gibbs never had made any application to the Veterans Administration.

The further gist of the facts is that W. B. Williams, notary public of Caddo Parish, and the Negro man, Henry Milton, whether in good or bad faith we cannot say nor is it necessary to determine, proved the claim of this colored woman, Bertha Smith, a flesh and blood person, in the name of Beulah Mitchell Gibbs. From the evidence of the various officials of the bank, we are satisfied by a clear preponderance of the evidence that Bertha Smith, in the company of W. B. Williams and Henry Milton, the fabricators of the claim, appeared at the bank with the initial check of $5,875.00. The bank officers had honored claims of other veterans when prepared and presented by Mr. Williams and nothing irregular had been reported. The evidence is clear that the officers of the bank in good faith placed the words, "Previous Indorsements Guaranteed" as an indorsement on this check only after having become satisfied that the person to whom payment of the check was desired by the government was the actual person being paid. We rule that Bertha Smith was in the full knowledge that she was practicing a fraud at the time. She is the one who presented herself for payment of the check and did prove to the bank that she was the person that the government intended to have paid. Bertha Smith, to give more assurance to the bank that she was Beulah Mitchell Gibbs, deposited the sum of $1500.00 in a savings account, after cashing the check.

W. B. Williams and Henry Milton were both dead at the trial on the merits. A review of a number of the affidavits, of the correspondence, and of the blanks filled during the application by the impostor discloses that they were all prepared by W. B. Williams, white, as a notary public, and nearly without exception all signed by Henry Milton, colored, as the attesting witness. There is nothing in the record which would show that the paying banks had cause or reason to doubt the honesty of either. The bank, before honoring the first large check, was impressed, however, by the fact that the two persons, Williams and Milton, whom the government relied upon, were the very two persons present in the company of the supposed beneficiary.

The officials of the bank made no inquiry as to whether or not the actual physical person at the bank who was actually paid was Beulah Mitchell Gibbs; their inquiry was totally as to whether or not the physical person present who was paid was the intended person that the government desired to pay—that is, the person who had made the claim through Williams and Milton—and, being satisfied of that, then they assumed, without more ado, except having the statements of Williams and Milton that the person was Beulah Mitchell Gibbs.

The government makes the point that the defendant banks must not only show that an impostor was paid, but that the impostor was actually Bertha Smith. The government, in argument and in brief, claims there are three sacramental requisites that the bank must fulfill: 1) The application was made by the party who cashed the check; 2) The check was delivered to the party who made the application; 3) The party at the window was the person to whom the check was delivered.

█ We believe that, by the clear preponderance of the evidence, the defendant banks have met these three argumentative requisites of the government.

█ Another noteworthy circumstance (non-existent, however, at the time of the payment of the check) is that the record discloses an indictment by the government of one, Bertha Smith—the indictment reciting at length that Bertha Smith executed a fraudulent claim in the name of Beulah Mitchell Gibbs as a result of which she received from the government and cashed certain checks. The checks enumerated in the indictment are the identical checks placed of record in this case. This is another judicial admission by the govern-

454

ment confirmatory in character of its initial judicial admissions aforementioned.

■ The government presents a differentiation in the application of the impostor rule in that it is subject in its construction as to whether or not the impostor ever was seen by a government official at any time during the imposition; the government shows that in the instant case every transaction was by mail and at a long distance. We lean with the view expressed in the following cases and accordingly do not espouse the government's claim: Emporia National Bank v. Shotwell, 35 Kan. 360, 11 P. 141, 57 Am.Rep. 171; United States v. First National Bank of Albuquerque, 10 Cir., 131 F.2d 985; Cf. Annotation 52 A. L.R. 1326.

Yet, it is only when the government has made a mistake, has been imposed upon (and this is more likely to be done by mail), that the government does need help: a full inquiry by the paying bank.

■ In reading the numerous cases cited in the briefs of counsel, at no time did we find that the court has ever sought or tried to establish a legal definition of who or what is an impostor; a reference to Webster's New International Dictionary, Second Edition, Unabridged, gives the lay definition of the word to be: "one who imposes upon others; esp., a person who assumes a character or title not his own, for the purpose of deception; a pretender." This would seem to be a legally-satisfactory definition.

As to the law applicable in the instant case, we are obeying the mandate of the circuit court. We are giving no significance nor weight to the following language in the case of United States v. First National Bank, Albuquerque, N. M., 10 Cir. 131 F.2d 985, 988, and which was repeated in Continental-American Bank & Trust Co., et al. v. United States, 161 F.2d 935, 936, 937:

"Some cases do not accept the thesis upon which the so-called impostor rule is based, United States v. Onondaga County Savings Bank, D.C., 39 F. 259; Onondaga County Savings Bank v. United States, 2 Cir., 64 F. 703; United States v. National Exchange Bank, 214 U. S. 302, 29 S.Ct.

665, 53 L.Ed. 1006, 16 Ann.Cas. 1184; United States v. Canal Bank & Trust Co., D. C., 29 F.Supp. 605."

The two cases above cited (131 F.2d 985 and 161 F.2d 935), fully explain, giving cogent reasons, why the above cases and in particular United States v. National Exchange Bank, supra, are not to be considered.

■ We are adhering in the instant case to the language found in Halsey v. Bank of New York & Trust Co., 270 N. Y. 134, at pages 138 and 139, 200 N.E. 671, at page 673: "In determining whether there was a forgery, the true test is whether or not the indorsement of the name of the payee was made by the person who was intended by the drawer to be the payee. If such person indorsed, there is no forgery. McKeehan, Negotiable Instruments Law, 41 Am. Law Reg. (N.S.) 437, 499, 561; Brannan, Negotiable Instruments Law (2d Ed.) [pp.] 220, 248."

■ The individual prognosis that we entertain is likewise set aside, to wit: that the sacramental language born out of the use of the law merchant for centuries, "Previous Indorsements Guaranteed" is drastically modified; in truth, practically annulled, in instances of this kind, so that it becomes purely a legal fiction; and further, that that language when placed on the back of the government check by the paying bank now merely means that the paying bank is satisfied and through with inquiry when the physical person being paid is the person the government thinks should be paid; and, forsooth, the three words of guaranty do not signify that inquiry was made by the paying bank as to whether or not the physical person being paid is actually the person named as payee on the check.

We make no mention of the local law, because of the mandate of the circuit court found at page 937 of 161 F.2d, to wit: "And (2) federal rather than local law governs controversies over commercial paper issued by the government, and in the absence of an applicable act of Congress the federal courts must fashion the governing rules."

We make the following findings of fact:

(1) On October 1, 1938 an application for "Death Compensation or Pension", as a result of the death of Ben Gibbs, Jr. while in military service, was received by mail in the office of the Veterans Administration, which was signed "Mrs. Beulah Mitchell X (her mark) Gibbs," which purported to have been executed before W. B. Williams, Notary Public on September 27, 1938, this application being made on the Veterans Administration standard form 534.

(2) That affidavits showing the marriage of Beulah Mitchell Gibbs to Ben Gibbs, Jr., that Beulah Mitchell Gibbs and Ben Gibbs, Jr. were living together when he entered military service, and that she had only been married the one time, were furnished the Veterans Administration prior to April 21, 1938, and on that date an "Affidavit in Support of Insurance Claim", on Standard form 514 of the Veterans Administration was received, signed "Mrs. Beulah Mitchell X (her mark) Gibbs", purporting to have been executed before W. B. Williams, Notary Public, on April 19, 1938, this document also bearing an affidavit of Henry Milton, in which he gives his address as 1224 Taylor St., Shreveport, Louisiana and Carrie Roberson, who gives her address as 514 Thurmond St., Shreveport, Louisiana, executed before the same Notary Public, in which they swear that they are acquainted with the beneficiary whose name is subscribed to the affidavit and know her to be the widow of Ben Gibbs, Jr.

(3) That it was determined by the Veterans Administration from the information contained in this application, the affidavits, and its file on Ben Gibbs, Jr., that Beulah Mitchell Gibbs, as the unremarried widow of Ben Gibbs, Jr., was entitled to Compensation and Insurance Benefits.

(4) That the checks were issued to Beulah Mitchell Gibbs, as unremarried widow of Ben Gibbs, Jr., and the first check mailed to 911 Milam St., Shreveport, Louisiana, the address given in the application, the remaining checks being sent to 1224 Taylor St., Shreveport, Louisiana, the Veterans Administration having been notified by letter to send them to this address.

(5) That this application for Compensation and Insurance benefits was false and fraudulently filed by some one other than Beulah Mitchell Gibbs, the widow of Ben Gibbs, Jr., the deceased veteran.

(6) That the person or persons making application for these Compensation and Insurance benefits never appeared in person before any official, agent or employee of the Government, and the application and all the information on which the Veterans Administration based its opinion that Beulah Mitchell Gibbs was entitled to the benefits for which these checks were issued, was received by mail.

(7) That the person or persons who received these checks never appeared in person before any official, agent or employee of the Government, the first check being mailed to Beulah Mitchell Gibbs, as unremarried widow of Ben Gibbs, Jr., 911 Milam St., Shreveport, Louisiana, and the remaining checks to Mrs. Beulah Mitchell Gibbs, as unremarried widow of Ben Gibbs, Jr., 1224 Taylor St., Shreveport, Louisiana.

(8) That the officials and employees of the Veterans Administration, in processing the claims for payment intended that payment be made to Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., the deceased veteran and no one else.

(9) That the officials and employees of the Treasury Department when issuing the checks intended them for Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., the deceased veteran and no one else.

(10) That one, Bertha Smith, representing herself to be Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., made application to the Veterans Administration of the United States for automatic insurance due, or claimed to be due, and for compensation due, or claimed to be due, Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr.

(11) That the Veterans Administration of the United States investigated the claim made by Bertha Smith, representing herself to be Beulah Mitchell Gibbs, the un-

remarried widow of Ben Gibbs, Jr., and required identification of the claimant as the real person whom she purported to be, namely Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr.

(12) That after the application and investigation referred to above, the Veterans Administration of the United States issued to the person making the claim, namely Bertha Smith, the checks referred to in Article 2 of the complaint in Civil Action No. 1838, referred to above, and in Article 2 of the complaint in Civil Action No. 1862, referred to above, and listed in Exhibit "B" attached to the complaint in Civil Action No. 1862, believing her to be Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., and as such the person entitled to cash the checks and receive the proceeds thereof.

(13) That after the issuance of the checks referred to in the foregoing paragraph, Bertha Smith, the identical person to whom the checks were issued and by whom the drawer (believing her to be Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr.) expected them to be cashed, endorsed them with a signature purporting to be the true and genuine signature of Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., and presented them to the Continental-American Bank & Trust Company of Shreveport, Louisiana, which required the indorsement of the checks by the payee named thereon, Beulah Mitchel Gibbs, the unremarried widow of Ben Gibbs, Jr., and the identification was only through the two persons who had helped prepare the person present in making her claim and the bank knowing that the person present was the one physical person the government desired to be paid, and assuming her to be Beulah Mitchell Gibbs, without more ado, except having the statements of Williams and Milton that the person was Beulah Mitchell Gibbs, cashed the same and thereafter, in due course, presented the check described in Article 2 of the complaint in Civil Action No. 1838, referred to above, to the Treasurer of the United States who paid the same; and through regular banking channels forwarded the check described in Article 2 of the complaint in Civil Action No. 1862, referred to above and listed in Exhibit "B" attached to the said complaint, to the Mercantile National Bank of Dallas with its indorsement of the genuineness of the signature as shown by the checks, and the Mercantile National Bank of Dallas, in regular course, presented them to the Treasurer of the United States who paid them.

(14) That a claim was filed with the General Accounting office by the Veterans Administration on September 22, 1943, for erroneous payment of the amount of $5,875.00 on check No. 2975 dated May 20, 1938 and notice given to the Mercantile National Bank by the Federal Reserve Bank on May 29, 1944.

(15) That the checks were cashed at the Continental-American Bank & Trust Company of Shreveport, Louisiana.

(16) That the Continental-American Bank & Trust Company of Shreveport, Louisiana placed its guarantee of endorsement on each of the checks and negotiated all of the checks, except No. 88,805 dated December 22, 1938 in the amount of $60.00, to the Mercantile National Bank at Dallas who in turn placed its guarantee on all endorsements upon each and all of the checks were then paid by the Treasurer of the United States.

We make the following conclusions of law:

(1) The negligence of the United States in failing to detect the fraud prior to the endorsement of the checks by the defendant banks does not bar it from recovery.

(2) That a claim was presented to the General Accounting Office on check No. 2975, in the amount of $5,875.00 and notice given the Mercantile National Bank of Dallas within the time prescribed by the Act of March 6, 1946, Pub.Law 308, 79th Congress, 31 U.S.C.A. § 129, and recovery on this check is not barred by this Act.

(3) The respondent banks are not liable to the complainant, the United States of America, on their endorsement of the checks referred to in the above findings of fact and the demands of the complainant, in each suit, should, therefore, be rejected.

(4) A decree may be entered in each case dismissing the suit of the United States against the respondent bank involved.

So, the judgment on the trial on the merits in strict consonance with the mandate of the circuit court is for the defendants. It will be signed upon presentation.