## UNITED STATES v. FIRST NAT. BANK & TRUST CO. OF ASHEVILLE, N. C.

### Civ. No. 948.

United States District Court
W. D. North Carolina, at Asheville.

Sept. 8, 1950.

T. A. Uzzell, Jr., United States District Attorney, Asheville, N. C., and J. B. Craven, Jr., Assistant United States Attorney, Morganton, N. C., for U. S.

J. M. Horner, Asheville, N. C., for defendant.

WARLICK, District Judge.

This action was heard at Asheville in August, during the regular summer session, and is one in which the plaintiff, the United States of America, seeks to recover of the defendant, the First National Bank and Trust Company of Asheville, the sum of $1,320.00, and was heard by the Court without a jury. From the evidence heard and the argument made, the Court, in determining the matter, finds the following facts:

During the war, and on September 18, 1942, Wayne M. Elkins, a native of Asheville, North Carolina, was inducted into the Army of the United States and was assigned Serial Number 14149965.

On November 12, 1932, the said Wayne M. Elkins married Marie Price in Spartanburg, South Carolina, and to said marriage two children were born. Six years later they separated and following the separation the two minor children lived thereafter with their grandmother, Mrs. Mamie Elkins, mother of Wayne M. Elkins, at her home in West Asheville, North Carolina, and that since 1938, the time of the separation, Elkins and his wife, Marie Price Elkins, have remained continuously separate and apart.

For some years prior to his induction into the Army, and following his separation from his wife, Wayne M. Elkins began living with a widow by the name of Daisy Marie Bennett, who was the mother of a daughter born of her marriage to her deceased husband, and continuing and up to his induction into the service, lived with her as man and wife. During these years when they lived together as such husband and wife, they resided in Asheville in a large apartment house, known as Ravenscroft Apartments, and in the Number 2 apartment in said building. They subsequently lived together as husband and wife in Washington, D. C., and Newport News, Virginia, and elsewhere, and for all purposes lived continuously together under that supposed status.

On his induction into the service Wayne M. Elkins made application for an allotment to be payable to his wife and two minor children, and in said allotment papers he falsely and fraudulently designated Daisy Marie Bennett with whom he had been living for some three years or more as his wife, and likewise falsely and fraudulently represented in his application to the government that her name was Daisy Marie Elkins, the allotment as made out by the plaintiff being in the exact form and words as follows: to "Mrs. Daisy Marie Elkins, Ravenscroft Apts. #2, Asheville, N. C.", for the benefit of the wife and two minor children.

Daisy Marie Bennett was not aware of this allotment on his part until the first check was delivered to her by the postal authorities in Asheville.

Subsequently and on the first of February, 1943, a check in the sum of $72.00, payable to Daisy Marie Elkins was delivered to the said Daisy Marie Bennett at the address designated in the allotment and was received by the said Daisy Marie Bennett as such payee. Subsequently additional and further checks were made payable as above and in like and similar amounts, though subsequently increased in amount, were delivered as was the delivery in the first instance, and continued down through the months in such delivery until May 1, 1944, when the last of such checks were delivered. All of which totalled the sum of $1,320.00.

All of these checks were drawn by the authorized representatives of the government of the United States and were deliverd by the Post Office Department to the said Daisy Marie Bennett, but under the name of Daisy Marie Elkins, as the allotment had been made out by the soldier, Wayne M. Elkins.

Following the delivery to the said Daisy Marie Bennett of the first check following its issuance on February 1, 1943, she took it to the defendant and tendered it to the defendant for cashing properly identifying herself as Daisy Marie Elkins. That prior to the cashing of said check and this requirement was subsequently followed in all of the checks tendered for cashing, the defendant bank, through its employees required Daisy Marie Bennett, who was then known to its employees and officials as Daisy Marie Elkins, to endorse the said check in her proper signature and in and under the name of the payee in each of said checks, and thereafter when the check had been cashed the defendant bank endorsed each of said checks as follows: "pay to the order of any bank or banker, or trust company, all prior endorsements guaranteed", and thereafter each of said checks on being presented through regular banking channels, was paid by the Treasurer of the United States, the bank acting throughout in good faith.

The apartment house in which Wayne M. Elkins and Daisy Marie Bennett lived was one of considerable size and actually had facilities for as many as 23 families. That all of these families, or those at least with whom Mrs. Bennett came in contact, knew her as Daisy Marie Elkins. That Wayne M. Elkins lived in the same apartment with her, introduced her as his wife, and that she on any number of occasions visited him as his wife at the various Army camps where he was assigned to duty, and that she was known to all persons as Daisy Marie Elkins.

The Directory of the City of Asheville, in 1942–43, at the address listed as Ravenscroft Apartments #2, carried the occupants as Wayne M. Elkins and wife, Daisy Marie.

Daisy Marie Bennett, upon the receipt of the proceeds of the checks made payable to Daisy Marie Elkins, sent considerable sums to Wayne M. Elkins, delivered amounts every so often to the mother of Wayne M. Elkins for the use and benefit of the two minor children of Wayne M. Elkins and his wife, Marie Price Elkins, and subsequently on being indicted and on entering her plea has paid to the government to date the sum of $230.00 in reimbursement of the amount received.

Wayne M. Elkins, after having become enamoured with Daisy Marie Bennett and at a time when he had been separated from his wife, Marie Price Elkins, for more than two years, employed John M. Anderson, Esquire, an attorney of Asheville, North Carolina, to file application for an absolute divorce with the intent in mind of marrying the said Daisy Marie Elkins, but prior to the actual trial of the action for divorce, he was inducted into the service and is still, for the purpose of this action, the husband of Marie Price Elkins, and was never married to Daisy Marie Bennett.

Embraced in the amount of the checks is the sum of $352.00 which was deducted from the pay of Wayne M. Elkins, under the allotment made.

Upon the following findings of fact the Court concludes as a matter of law as follows:

That the Court has jurisdiction of the action.

█ The real question presented here is whether the signatures on the various checks of the said Daisy Marie Elkins are forgeries or mere steps in a fraud. This has been the question presented in well nigh every case decided under similar facts as are reported in the various reports of the court. Naturally the signature to each of the checks that was issued under the allotment by the soldier represent the genuine signature of the person to whom they were delivered. The checks apparently were delivered to her and were intended for her, and though they were voidable for fraud, she was the payee in the checks. Undoubtedly for the purpose of a cause of this character the government is bound by those acting for it when the check is made payable to the individual set out in the allotment by the soldier who was entitled as such to make such allotment. Here you have the soldier stating that Daisy Marie Elkins was his wife, and that there were two minor children in his family. Willingly he has deducted from his pay an amount set by the government as the soldier's contribution to the allotment, and then under his designation the checks in orderly fashion thereafter were delivered to the named payee. Though a fraud in a sense was being perpetrated on the government, the bank, the defendant herein to whom the checks were presented as received, cashed them under the endorsement of the payee set out in the checks by the government, and any inquiry made by it would have brought its officers and agents to the same conclusion. In fact, all of the information that could have been secured in and around Asheville would have corroborated the payee in her statement. The banks undoubtedly do not have the burden of correcting a mistake made or detecting a fraud committed.

█ The so-called "imposter rule", which has a universal adoption in America, would exonerate the defendant in this particular case as it is to the effect that a bank, in cashing the check, guarantees thereafter that the person to whom the check was issued has endorsed it, that the genuine signature appears thereon, and that as such it is entitled to receive honor and credit in the negotiable instrument world. It does not guarantee that the check was honestly procured from the drawer.

█ A case identically in point but yet lacking in one at least of the strong particulars in the case herein correctly states the rule of law. This case is even stronger since it appears without dispute that the soldier was actually living with the payee as his wife whereas in the decided case such did not appear.

"The government made no mistake as to the identity of the person in issuing the checks to Hattie Price Dunn. The mistake of fact was as to the legal status of such person. The checks were issued to the person the soldier and the government intended to have them issued to, viz., a woman going under the name of Hattie Price Dunn. It is true the government would not have issued these checks to her had it been known that she was not the wife of the soldier, but this mistake as to legal status is quite a different thing from a mistake as to identity of person. Therefore, when these checks were presented to the defendant bank, they were indorsed with the name of the person intended to be named and actually named in the checks as payee thereof, and, when the Liberty Insurance Bank indorsed the check, guaranteeing all prior indorsements, it simply guaranteed that the indorsement of the name 'Hattie Price Dunn' on the back of the checks was the indorsement of the person named in the face of the check. It was in no sense any guaranty as to her legal status." United States v. Liberty Insurance Bank, D.C., 26 F.2d 493, 494.

Similar cases are all to the same effect: Continental American Bank & Trust Co. v. United States, 5 Cir., 161 F.2d 935; Fidelity & Deposit Co. of Maryland v. Union Trust Co., 2 Cir., 129 F.2d 1006; United States v. First National Bank, 10 Cir., 131 F.2d 985; United States v. First National Bank, 10 Cir., 124 F.2d 484.

It is evident, therefore, that the plaintiff is not entitled to recover and its demand for judgment is denied.

Judgment carrying into effect this decision to be submitted by counsel.